Sucesión A. Lledó, recurrente, *v.* Comisión Industrial de Puerto Rico, etc., demandada y Guillermo Atiles Moréu, Administrador del Fondo del Estado; Luis Santiago Pacheco y Eurípides Figueroa, beneficiarios del obrero occiso.

Núm. 349.—*Sometido:* Noviembre 20, 1945. *Resuelto:* Noviembre 29, 1945.

*Víctor J. Vidal González,* abogado de la recurrente; *A. De Jesús Matos* y *A. Sandín del Manzano,* abogados del Administrador del Fondo del Estado; *E. Cornier Martínez,* abogado de los beneficiarios.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

En el mes de julio de 1944, la Sucesión A. Lledó, patrono asegurado en el Fondo del Seguro del Estado y dedicado al negocio de fabricación y venta de hielo en la ciudad de Ponce, tomó a su servicio al joven obrero Concepción Santiago, para trabajar como repartidor en un vehículo de motor que dicho patrono utilizaba para la venta y distribución de hielo. En agosto 16 de 1944, mientras el joven Santiago se encontraba en el desempeño de las funciones inherentes a su empleo, al ir a subir a la guagua resbaló en el estribo del vehículo, cayó y fué atrapado por una de las ruedas traseras del mismo, quedando como consecuencia privado de su vida.

El administrador del Fondo resolvió que el accidente era compensable. Otorgó a los padres del obrero difunto una compensación por la suma de $2,000 y resolvió, además, que el patrono debía pagar a los padres reclamantes otra suma igual a la fijada como compensación, basándose en que el obrero había sido empleado por el patrono en contravención de las disposiciones de la Ley Reglamentando el Empleo de Menores (Ley núm. 230 de mayo 12 de 1942, pág. 1299). En mayo 1 de 1945, la Comisión Industrial de Puerto Rico confirmó la decisión del administrador; y habiéndose negado a reconsiderar su resolución, el patrono acudió ante esta Corte mediante la presente solicitud de revisión.

1. El primer fundamento de la solicitud de revisión es que la Comisión Industrial erró al aplicar a la resolución del presente caso la doctrina sentada por esta Corte en *Monta-*

*ner* v. *Comisión Industrial* y *Ramón García Robles*, 54 D.P.R. 67, en que el reclamante era el mismo menor, mientras que en el presente caso los reclamantes son los padres, quienes dependían para su subsistencia del salario del menor y sabían que éste estaba trabajando en violación de la ley. Alegan los patronos recurrentes, que ellos fueron inducidos a error en cuanto a la edad del muchacho, por las falsas y fraudulentas simulaciones del propio menor y de su padre reclamante y también por la apariencia física del obrero, quien aparentaba ser mayor de 18 años en la fecha en que fué empleado y demostraba vigor, capacidad y aptitud en el desempeño de sus labores. En apoyo de su contención invocan la disposición del inciso 5 del artículo 3 de la Ley de Compensaciones por Accidentes del Trabajo, tal como quedó específicamente enmendada por la Ley núm. 162 de 14 de mayo de 1943 (pág. 525).

2. Los recurrentes señalan, como segundo error cometido por la Comisión, el no haber resuelto que los padres del menor están impedidos de obtener del patrono una doble penalidad, por encontrarse *in pari delicto* con el patrono; y alegan, que siendo los padres culpables de haber violado la ley, no debe permitírseles obtener un beneficio o enriquecimiento injusto como consecuencia de sus actos ilegales.

3. Alegan por último los recurrentes que la interpretación de la evidencia por la Comisión fué de tal modo arbitraria y errónea que constituye un grave error de derecho, revisable por esta Corte Suprema.

Examinemos las leyes vigentes en la fecha en que el obrero Concepción Santiago perdió su vida.

La Ley núm. 230 de mayo 12, 1942 ((1) pág. 1299), titulada "Ley para Reglamentar el Empleo de Menores, etc.", dispone en su artículo 3 que "ningún menor entre catorce (14) y menos de diez y ocho (18) años de edad será empleado ni se le permitirá ni tolerará que trabaje en ninguna ocupación lucrativa, ni en relación con ésta", por un período

de tiempo mayor que el específicamente provisto por el mismo artículo y por el 4 de·la citada ley. De acuerdo con el artículo 5, para poder trabajar el número de horas autorizado por el estatuto, es necesario "que su patrono procure y conserve en sus archivos y accesible para cualquier funcionario, . . . un certificado de empleo o un permiso especial expedido de acuerdo con lo que más adelante se dispone en esta ley".

El artículo 15 de la misma ley dispone que "ningún menor de diez y ocho (18) años será empleado ni se le permitirá ni tolerará que trabaje en ninguna de las siguientes ocupaciones, declaradas peligrosas a la salud y la vida ni en relación con ellas:" Entre las ocupaciones peligrosas a la salud y la vida, enumeradas en el citado artículo, figura la siguiente: "Como conductor de un·vehículo de motor o ayudante del mismo, entendiéndose por ayudante cualquier persona que vaya en el vehículo y realice trabajos relacionados con la distribución de mercancías".

De acuerdo con el certificado del acta de nacimiento del menor Concepción Santiago, éste nació el día 1 de febrero de 1930. Por lo tanto, en agosto 16, 1944, fecha del accidente, su edad era catorce años, seis meses y diez y seis días. La prueba demostró que dicho menor estaba trabajando como ayudante del conductor de un vehículo de motor; que el menor iba en el carro; y que el trabajo que realizaba estaba relacionado con la distribución de hielo a los clientes de su patrono. Siendo ésa una de las ocupaciones que la Ley (Art. 15, supra) declara "peligrosas a la salud y la vida," el empleo en ella de un menor de diez y ocho años, como lo era Concepción Santiago, constituía una violación del estatuto.

■■ El artículo 3, párrafo 5, de la Ley de Compensaciones por Accidentes del Trabajo (Compilación de 1941, págs. 376 y 1072), según quedó enmendado por la Ley núm. 162 de 1943 (pág. 525), dispone:

"*Derechos de los Menores.*—En caso de obreros menores de diez y ocho (18) años empleados en contravención a las leyes regulando el empleo de menores vigentes a la fecha del empleo, que sufrieren lesiones, . . . . la compensación que les corresponda por cualquier incapacidad permanente a que quedaren afectos, *o a sus beneficiarios en casos de muerte,* será el doble del importe correspondiente a un obrero de diez y ocho (18) años empleado legalmente;" (Bastardillas nuestras.)

Dándose cuenta sin duda de que la concesión de doble indemnización a los padres de un menor empleado en contravención de la ley, pudiera constituir un incentivo para que, los padres poco escrupulosos o tal vez necesitados de mayores ingresos para el sostenimiento de su familia, engañasen a los patronos haciéndoles creer que sus hijos tenían la edad requerida por el estatuto, el legislador añadió al párrafo 5 del artículo 3, supra, lo siguiente:

"Disponiéndose, que la doble penalidad a que se refiere esta sección no será aplicable al caso de un patrono que sea inducido a error *por la apariencia física del menor o por una declaración jurada hecha con anterioridad al empleo del menor por el padre,* por la madre, o por el tutor o encargado del menor, en que se haga constar que éste es mayor de edad. Disponiéndose, además, que el patrono pagará la compensación adicional aquí provista, etc." (Bastardillas nuestras.)

Vemos, pues, que el legislador ha concedido a los beneficiarios de un menor empleado en contravención de la ley, el derecho a recibir doble compensación por la muerte del menor en un accidente del trabajo. Para que pueda quedar exento de esa obligación, el patrono está obligado a probar (1) que la apariencia física del menor le indujo a creer que el menor tenía en realidad la edad fijada por el estatuto; o (2) que fué inducido a ese mismo error por una declaración hecha bajo juramento por el padre, la madre o el tutor del menor, con anterioridad a su empleo, haciendo constar que el menor tenía la edad requerida para poder trabajar legalmente en la clase de empleo en que fué lesionado o perdió la vida.

En el caso de autos, el patrono recurrente basó su alegada exención en las dos únicas causas reconocidas por el estatuto. Y para sostenerlas ofreció prueba testifical, la cual fué refutada por la presentada por los beneficiarios.

Como testigo del patrono declaró Manuel Benítez Rexach, contratista: que en varias ocasiones el joven Santiago fué a su oficina, que queda junto a la del patrono recurrente, a solicitar trabajo, diciéndole que había trabajado anteriormente en la planta de hielo; que él, Benítez, le preguntó al muchacho: ¿Y tu papá? y el muchacho le contestó: "Tengo padre"; que pocos días después volvió el muchacho acompañado de su padre, y al preguntar Benítez por la edad del muchacho, el padre le dijo que tenía como 19 años; que su apreciación fué que el muchacho era fuerte, de una estatura como de cinco pies tres pulgadas, peso como de 125 libras y de diez y ocho y medio a diecinueve años de edad; que Benítez llevó al padre y al hijo donde Antonio Lledó y se lo recomendó como un muchacho fuerte, repitiéndole que el padre le había dicho que tenía como 19 años; que Lledó le preguntó al padre la edad del muchacho y el padre le dijo que tenía alrededor de 19 años; que Lledó puso al muchacho en un *truck* para repartir hielo y lo vió en varias ocasiones cargando bloques de hielo de 75 ó 100 libras de peso.

El Sr. Antonio Lledó y dos testigos más declararon en el mismo sentido que el Sr. Benítez Rexach, en cuanto a la apariencia física y probable peso y edad del difunto obrero.

Contradiciendo la prueba ofrecida por el patrono, declaró el padre del menor, que para la fecha de su muerte el muchacho tenía catorce años y medio; que nunca fué con su hijo a la oficina de Benítez; que nunca dió al Sr. Lledó, ni a Benítez, informe alguno en cuanto a la edad de su hijo y que esos informes nunca le fueron pedidos; que nadie le pidió permiso para poner a su hijo a trabajar con la Sucesión Lledó y que él no hubiese dado el permiso pues quería que su hijo estudiase; que su hijo no era ni grueso ni del-

gado y tenía como cinco pies y un cuarto de pulgada de estatura; que no era fuerte ni podía serlo, pues era hijo de un pobre y a veces si comía a mediodía, no comía por la noche; que él supo que su hijo estaba trabajando con Lledó, pero no sabía que estuviese trabajando en las guaguas de repartir hielo, ni en trabajo fuerte; que él creyó que el muchacho estaba empleado para barrer y hacer mandados. Los demás testigos presentados por los beneficiarios declararon que el muchacho era "un niño de escuela", ni grueso ni delgado; y que a juzgar por su aspecto y complexión física representaba tener entre 14 y 15 años de edad.

La Comisión, que vió y oyó declarar a los testigos de una y otra parte, resolvió el conflicto de la evidencia en cuanto a la apariencia física del muchacho, dando crédito a lo declarado por el padre y sus testigos al efecto de que el muchacho representaba tener la edad que realmente tenía o sea entre 14 y 15 años. La declaración del testigo Benítez Rexach no podía tener gran valor probatorio. ¿Si era cierto, como declaró dicho testigo, que el joven Santiago era fuerte y vigoroso y aparentaba tener de diez y ocho y medio a diecinueve años de edad, qué razón tuvo el Sr. Benítez Rexach para preguntarle al muchacho si tenía padre y pedirle que viniese con el padre para darle empleo? ¿No es esa duda del Sr. Benítez Rexach la mejor prueba de que la apariencia física del menor no le indujo a él, ni tampoco al Sr. Lledó, al error de creer que estaban tratando con un joven que tenía edad legal para trabajar? La prueba presentada por los beneficiarios, creída por la Comisión, es suficiente para justificar la resolución recurrida.

Para que pueda establecerse legalmente la defensa de que el patrono, al emplear al menor, fué inducido a error por el padre, madre o tutor del menor, el estatuto requiere que se presente como evidencia de ese hecho "una declaración ju-

rada hecha con anterioridad al empleo del menor por el padre, por la madre o por el tutor del menor, en que se haga constar que éste es mayor de edad''. Ese requisito del estatuto, que es una garantía tanto para el patrono como para el padre del menor, no fué cumplido en este caso. No se presentó ninguna declaración jurada por el padre o por la madre del muchacho. La Comisión admitió prueba testifical en cuanto a manifestaciones que se dice fueron hechas por el padre. Éste las negó rotundamente. La Comisión resolvió el conflicto dando entero crédito a lo declarado por el padre, No estamos autorizados para intervenir con el fallo de la Comisión.

Tal vez fuere mejor para la protección de los menores si el estatuto, en vez de imponer al patrono la obligación de pagar a los beneficiarios del menor una compensación adicional igual a lo que deba pagar el Fondo del Estado, eximiera al Fondo de la obligación de pagar compensación alguna en estos casos de menores e impusiese al patrono la obligación de pagar la compensación normal fijada por el estatuto, como si se tratase de un caso de patrono no asegurado. Así quedaría suprimido el incentivo de la doble compensación y el menor protegido contra la explotación, tanto la patronal como la paternal.

Considerados todos los hechos y circunstancias del presente caso y, especialmente, que el menor fué empleado para trabajar en una ocupación peligrosa a la salud y la vida, para la cual no podía ser legalmente autorizado ni por sus padres ni por los funcionarios del Departamento del Trabajo, resolvemos que la Comisión Industrial no erró al imponer a los recurrentes el pago de la doble compensación.

*La resolución recurrida debe ser confirmada.*