María Teresa Rodrigo, peticionaria, *v.* Tribunal Superior de Puerto Rico, Sala de San Juan, Hon. Héctor A. Colón, Juez, demandado; Carlos Romero Barceló, Alcalde de San Juan, interventor.

*Número*: O-72-43    *Resuelto*: 2 de febrero de 1973

152

*Luis Muñoz Rivera,* abogado de la peticionaria; *William H. Preston, Jr., José Ramón Pérez Hernández, Josefina Ríollano, José R. Oller, José Roberto Feijoo,* abogados del interventor.

El Juez Asociado Señor Ramírez Bages emitió la opinión del Tribunal.

Recurre la peticionaria de la sentencia del tribunal de instancia que confirmó la resolución de la Comisión para Ventilar Querellas contra Funcionarios y Empleados Municipales, establecida por el Gobierno de la Capital, por virtud de la cual destituyó a la peticionaria de su puesto de telefonista en el Centro de Diagnóstico Dr. López Antongiorgi. Los fundamentos en que se apoya dicha resolución fueron relacionados en la misma así:

1.—Que en el período entre el 16 de octubre y el 4 de noviembre de 1968 la querellada se ausentó de sus labores y en su lugar se dedicó a trabajar en el Comité del Precinto 6 de un partido político de Puerto Rico, mientras recibía compensación del Municipio de San Juan durante dicho período de tiempo; y

2.—Que dicha empleada se enfrascó en una discusión en 25 de agosto de 1969 dentro de las horas de trabajo regulares con otra empleada profiriéndole insultos delante de los pacientes que se encontraban en el Dispensario en ese momento.

Concluyó dicha Comisión que la peticionaria incurrió en los siguientes motivos que constituyen justa causa para su destitución: abandono del servicio, descuido y negligencia en el desempeño de sus funciones así como una conducta desordenada en el desempeño de las funciones de su empleo. Art. 93, Ley Municipal (21 L.P.R.A. sec. 1553); Sección 41, incisos (b), (d) y (f), Ordenanza Núm. 63, Serie 64-65.

Los cargos que dieron lugar a las actuaciones anteriores, formulados por el Alcalde de San Juan, se limitaron a: (1) la ausencia de la peticionaria de su trabajo "sin la debida autorización de ley durante el referido periodo de tiempo" mientras continuó recibiendo remuneración del municipio sin haber desempeñado las funciones de su cargo; y (2) tales ausencias injustificadas constituyeron un descuido y negligencia en el desempeño de las funciones de su cargo. Como tercer cargo se le imputó una conducta desordenada, incorrecta y lesiva al buen nombre del Municipio consistente en proferir insultos en voz alta en el Dispensario a la Sra. Rosa H. Rivera de Román delante de otros empleados y pacientes, sin que ésta la provocara.

La peticionaria le imputa al Tribunal Superior la comisión de dos errores consistentes el primero en haber confirmado la Resolución de la Comisión, ya que ésta descartó el testimonio de la Sra. Eugenia María Pesante, quién, siendo un testigo de cargo, declaró, sin que fuera contradicha, que la peticionaria no asistió a sus funciones como telefonista durante ese período porque, a petición de la supervisora general, ella le había prestado esa empleada para que trabajara en otra dependencia del Municipio.

El segundo error imputado consiste en que el Tribunal Superior no ordenó la celebración de un nuevo juicio. Sustenta la peticionaria que procedía dicho nuevo juicio porque la transcripción de los procedimientos fue hecha por una persona distinta a aquella que tomó las notas y porque dicha transcripción fue entregada en forma incompleta al abogado de la peticionaria, razones por las cuales estima que no existía un récord adecuado de los procedimientos seguidos ante la Comisión.

La peticionaria no señala perjuicio específico alguno que le haya sido ocasionado por el hecho de que la transcripción del récord no haya sido realizada por la misma persona que tomó las notas—los procedimientos también fueron grabados

—o porque su abogado no haya tenido una copia completa de la transcripción. De hecho el representante legal de dicha parte hace un análisis de la prueba en su alegato que incluye el testimonio de todos los testigos que declararon ante la Comisión.

1.—Debemos examinar, primeramente, el estado del derecho aplicable en este caso.

El Art. 93 de la Ley Núm. 142 de 21 de julio de 1960 disponía que la revisión judicial por el Tribunal Superior de las decisiones de la Comisión procedería "en cuanto a cuestiones de derecho." La Ley Núm. 114 de 27 de junio de 1964 suprimió la limitación a cuestiones de derecho de la revisión judicial. Ni la Ley Núm. 99 de 22 de junio de 1966, vigente cuando se radicaron los cargos en el presente caso ni la enmienda posterior (hubo una ulterior enmienda por la Ley Núm. 79 de 23 de junio de 1971) incorporaron fórmula alguna de revisión. En ausencia de un claro indicio de la intención de este proceder legislativo [1] es presumible que la anterior legislación iba dirigida a asimilar la facultad de revisar de los tribunales a la que usualmente entendemos que se nos asigna para revisar organismos administrativos.

Se ha dicho repetidas veces que este Tribunal no intervendrá con las conclusiones de hecho de un organismo administrativo si las mismas están sostenidas por evidencia sustancial. *Robledo, Alcalde* v. *C.V.Q.M.*, 95 D.P.R. 1, 17 (1967); *Sucesión A. Bernat* v. *Peñagarícano*, 84 D.P.R. 526, 531 (1962); *López* v. *Junta de Planificación*, 80 D.P.R. 648, 673 (1958); *Concepción* v. *Junta de Contabilidad*, 80 D.P.R. 194, 199 (1958); *Hilton Hotels* v. *Junta de Salario Mínimo*, 74 D.P.R. 670 (1953); aunque, desde luego, esa norma general viene supeditada a las disposiciones del estatuto específico de que se trate. *Hilton Hotels*, supra, a la pág. 685. También es

[1] No hemos encontrado debates sobre la cuestión en el *Diario de Sesiones* de la Asamblea Legislativa.

norma aceptada que si las conclusiones de hecho del organismo administrativo están enteramente desprovistas de prueba, el tribunal en revisión está facultado para descartarlas por convertirse entonces la cuestión en una de derecho. *Robledo, Alcalde* v. *C.V.Q.M.*, supra; *Ortega* v. *Comisión Industrial*, 73 D.P.R. 191 (1952); *Sucesión Lledó* v. *Comisión Industrial*, 65 D.P.R. 430 (1945); *Hernández* v. *Comisión Industrial*, 60 D.P.R. 165 (1942).

En el presente caso, sin embargo, al revisar el récord administrativo no debe olvidarse que la función revisora se la atribuye la ley al Tribunal Superior y que este Tribunal no está revisando al organismo administrativo, sino a un tribunal que a su vez hizo una determinación en torno a la apreciación de la prueba que hiciese el organismo administrativo (4 L.P.R.A. sec. 37(d)). El enfoque que debe asumir un tribunal apelativo en tal situación ha sido expresado por el Juez Frankfurter del modo siguiente:

"Nuestro poder para revisar la corrección de la aplicación de la presente norma (*standard*) ['evidencia sustancial a base de la totalidad del récord'] ha de ser rara vez invocado. Si, a base de la totalidad del récord, hay evidencia sustancial para sostener las conclusiones administrativas es una cuestión que el Congreso ha depositado bajo la custodia de las Cortes de Apelaciones. Este Tribunal intervendrá en aquellas raras ocasiones en que aparezca que la norma ha sido mal aprehendida [misapprehended] o marcadamente mal aplicada." *Universal Camera Corp.* v. *N.L.R.B.*, 340 U.S. 474, 490-491([2]) (1951).

La Ley Municipal vigente dispone en parte así:

"Habrá en cada municipio una Comisión compuesta de tres personas, nombradas por el Alcalde, con el consejo y consentimiento de la Asamblea Municipal, para ventilar querellas contra los funcionarios y empleados municipales, con excepción del Alcalde. . . . Los funcionarios y empleados municipales podrá ser

---

([2]) El Profesor Davis, sin embargo, señala que en numerosas ocasiones el Tribunal Supremo Federal ha sustituido su criterio por el de la Corte de Apelaciones. Davis, *Administrative Law Treatise*, Vol. 4. Sec. 29.04.

destituidos por el Alcalde, por justa causa, previa formulación de cargos y previa audiencia señalada con diez (10) días de anticipación. Dicha audiencia se celebrará ante la Comisión del municipio correspondiente y en la misma el funcionario o empleado afectado podrá defenderse de los cargos y estar representado por abogado. . . . De la resolución de la Comisión podrá tanto el funcionario o empleado como la parte actora, dentro de los quince (15) días de haberse emitido y notificado dicha resolución, solicitar revisión judicial de la resolución para ante el Tribunal Superior, el cual podrá celebrar un juicio de novo, cuando no exista un récord adecuado de los procedimientos seguidos ante la Comisión." (21 L.P.R.A. sec. 1553, Suplemento.)

Nótese que al enmendarse dicho Art. 93, se eliminó su anterior disposición que limitaba la revisión judicial de una destitución ante el Tribunal Superior a cuestiones de derecho.

Los incisos (b), (d) y (f) de la Sec. 41 de la Ordenanza 63, Serie 64-65, del Gobierno de la Capital disponen que:

*"Sección 41: DESTITUCIONES:* Los empleados permanentes sólo podrán ser destituídos por el Alcalde por justa causa, previa formulación de cargos y previa audiencia señalada con diez (10) días de anticipación.

A los fines de esta Ordenanza, entre otros, serán motivos para destitución los siguientes:

.        .        .        .        .        .        .        .        .

(b) Descuido y negligencia en el desempeño de sus funciones.

.        .        .        .        .        .        .        .        .

(d) Observancia de una conducta desordenada, incorrecta o lesiva al buen nombre del Municipio de las funciones de su empleo.

.        .        .        .        .        .        .        .        .

(f) Abandono de servicio."

En *Lebrón* v. *Junta de Personal,* 100 D.P.R. 164 (1971), dijimos que lo que se contempla como constitutivo de abandono del servicio son ausencias no autorizadas de carácter vicioso, sin justificación razonable y no cualquier tipo de ausencia.

Veamos ahora la prueba aducida en este caso.

2.—*Prueba testifical* (durante la vista se acordó por las partes, en vistas de que no se elevó la prueba documental, que la expresión que surge del récord sobre la misma refleja lo que dicha prueba establecía.)

La prueba de cargo fue como sigue:

A.—Concepción Ríos de Otero declaró que trabajaba en el Dispensario Dr. López Antongiorgi durante el período comprendido entre el 16 de octubre y el 4 de noviembre de 1968; que para esa fecha la peticionaria también trabajaba en dicho dispensario como operadora del cuadro telefónico; que la peticionaria estuvo ausente durante el mencionado período; que el 25 de agosto de 1969 hubo un incidente en el dispensario entre la peticionaria y la Sra. Hilda Rivera, que tuvo que acudir para que terminasen la discusión; que al ella llegar continuaba la discusión; que oyó cuando la peticionaria le dijo a Hilda Rivera que ella era una malagradecida y que ella (la peticionaria) había estudiado para telefonista; que Hilda Rivera contestó que ella también había estudiado y que no la provocara, que estaba en horas de trabajo y que después hablaban, que no vio muy alteradas a las que discutían; que el incidente ocurrió como a las 7:30 y que en el lugar había otros empleados y pacientes. No pudo precisar las fechas de las ausencias pero dijo que ocurrieron "como de octubre a noviembre". Declaró, además, que para la fecha del incidente verbal aludido había dos turnos para operar el cuadro telefónico, de 8 a 12 y de 1 a 5; que el turno de 8 a 12 estaba siendo desempeñado por Hilda Rivera; que ella era supervisora de enfermeras y comenzaba a trabajar a las 7 de la mañana; que solamente la labor de Hilda Rivera fue interrumpida por el incidente verbal; que la peticionaria estaba libre—es decir, no estaba trabajando—al ocurrir el incidente y que no escuchó palabras obscenas.

B.—Eugenia María Pesante declaró que para la fecha de las alegadas ausencias era administradora del Dispensario Dr. López Antongiorgi en Puerto Nuevo; que era supervisora

directa e inmediata de la peticionaria y que para el período comprendido entre el 16 de octubre y el 4 de noviembre de 1968 la peticionaria estaba prestada al centro de diagnóstico porque le pidieron una empleada prestada y la envió a ella. Se le confrontó con una declaración jurada[3] prestada ante uno de los abogados del Municipio de San Juan en que la testigo había declarado que la peticionaria, durante el referido período, estuvo ausente en vacaciones regulares según reflejaba la libreta que la secretaria de la testigo llevaba por orden de ésta. Declaró que tales libretas se llevaban como una cosa administrativa suya, pero que no eran oficiales; que lo cierto era que la peticionaria estaba prestada en las oficinas centrales del centro de diagnóstico a petición de la Srta. Saldaña; que las libretas se llevaban de conformidad con las tarjetas que se ponchaban diariamente; que no sabía si en la oficina central la peticionaria ponchó tarjetas, pues no seguía la rutina después que salían de su lado. En el contrainterrogatorio declaró que la peticionaria observó siempre "Una conducta regular, una conducta buena, regularmente, una conducta honesta, una señora callada." De su declaración surge que en las referidas libretas decía que durante el período concernido, la peticionaria estaba en "Vacaciones Regulares". Después, entre paréntesis, aparecía "Trabajo especial, oficina central." Explicó la testigo que la peticionaria había solicitado vacaciones regulares que no se le dieron y que "cualquiera comete un error, y más cuando no son cosas oficiales. . . ." También aparece de su testimonio que "Se llenó SP-7 por vacaciones regulares" pero la testigo, quien tenía que firmar dicha forma para procesar las vacaciones, no la firmó. La forma la llenó la secretaria de la testigo. Testificó, además, que las libretas se llenan semanalmente por lo regular y muchas veces no iban semanalmente "porque eso es empleado por empleado y coge demasiado tiempo." No supo decir dónde específicamente estaba la peticionaria ni la naturaleza

---

[3] Dicha declaración jurada no se presentó en evidencia.

de su función durante ese periodo. Tampoco tiene conocimiento personal de si la peticionaria acudió a la oficina central durante el referido período.

Interrogada sobre porqué no dijo, al prestar su declaración jurada, que la peticionaria estaba prestada, declaró que el texto lo había preparado el abogado y que "con lo sorpresivo de esto, no digo yo esto, diría, hubiese dicho cualquier cosa." Posteriormente declaró que se había preparado el texto en base a preguntas contestadas por ella.

También surge de su testimonio que en las tarjetas de asistencia de la peticionaria—que se presentaron en evidencia —aparece que "se llenó forma SP7" y al lado "Vacaciones regulares." El contenido de esas tarjetas se vaciaba luego en las libretas a que antes se hace referencia y en ellas no aparecía que a la peticionaria se le hubiese transferido a la oficina central. Tanto las tarjetas como las libretas estaban bajo la custodia de la testigo Pesante. La peticionaria tenía derecho a treinta días de vacaciones al año, pero la testigo Pesante desconoce cuántos días tenía acumulados.

La testigo renunció a su cargo el 21 de agosto de 1969, el mismo día en que se estaba realizando la investigación en el centro de diagnóstico sobre las ausencias de la peticionaria. Testificó que su renuncia no tuvo nada que ver con la investigación.

C.—Aida Cordero declaró que para el período del 16 de octubre al 4 de noviembre de 1968 era la secretaria oficial de la Administradora del Dispensario Dr. López Antongiorgi; que era la persona encargada de llevar las libretas de asistencia; que sacaba la información de las tarjetas; que llevaba esas tarjetas por instrucciones de la administradora Sra. Pesante; que ella ponía en las tarjetas lo que le decía la Sra. Pesante; que se llenó una Forma SP-7, que es la forma que se le llena a los empleados para vacaciones regulares o de enfermedad y que por eso no surge de las tarjetas que la peticionaria estu-

viese en la oficina central; que ella llenaba la forma SP-7 por instrucciones de la Sra. Pesante; *que la forma se llenó; fue firmada por la Sra. Pesante y salió de la oficina; que dicha forma regresó posteriormente al dispensario y fue archivada por ella en el expediente de la peticionaria; que en el expediente de la peticionaria, el cual se le mostró, no aparece la referida forma; "que ella [la testigo] no la sacó de allí y no sabe quién lo hizo"; que para la semana de octubre 21, la forma SP-7 había sido llenada, es decir, que pudo haber sido unos días antes; que la forma fue devuelta sin procesar de la Oficina de Personal; que una vez la forma se llena el empleado ya empieza a disfrutar sus vacaciones "... a menos ... que no se le dé curso a las vacaciones allá o por necesidad del servicio";* que la forma regresó a la oficina como un mes más tarde; que la forma SP-7 vino devuelta completa, o sea, que no la aprobaron; que en las tarjetas dice que la empleada estaba de vacaciones porque "... presumo que para ese tiempo no había llegado la forma todavía devuelta y se supone que se habían procesado las vacaciones"; que no recuerda si la forma fue firmada por la Sra. Pesante "... pero se supone que una vez salga está firmada"; que la forma tenía que ir firmada "... porque si no, no le procesaban las vacaciones a los empleados." (Énfasis nuestro.)

D.—Rosa Hilda Rivera de Román declaró que desempeñaba funciones de telefonista en el Dispensario Dr. López Antongiorgi; que desempeñaba esas funciones también durante el período del 16 de octubre al 4 de noviembre de 1968; que había dos turnos (de 7 a 12 y de 1 a 5) y dos telefonistas; que los turnos eran rotativos, alternados; que para el período comprendido entre el 16 de octubre y el 4 de noviembre de 1968 la peticionaria estuvo ausente de sus funciones; que para tal período ella (la testigo) siguió trabajando normalmente hacía el turno que le tocaba—y el otro turno, el de la peticionaria, se quedaba solo; que para ese período la peticionaria estaba trabajando en el Comite del Partido Popuar Demo-

crático en la Avenida De Diego; que durante el 1969 la peticionaria disfrutó "como 42 días" de vacaciones; que la Sra. Pesante y la peticionaria son amigas y se visitan mucho; que el 25 de agosto de 1969 hubo un incidente entre ella y la peticionaria como a las 7:30 de la mañana; que eran horas laborables para ella pero no para la peticionaria; que en ese momento estaba la Sra. Ojeda, empleada del municipio y más de 25 pacientes; que hizo un informe sobre el incidente a la Dra. Núñez; que no puede precisar las fechas ni las horas durante las cuales fue al Comité Popular y vio allí a la peticionaria. Declaró, además, que el incidente fue en voz alta y que antes de eso no había tenido problema alguno con la peticionaria; que al regresar la testigo de sus vacaciones encontró una carta de traslado para "la 18" de parte de la Sra. Pesante; que fue al municipio a indagar si dicho traslado era oficial, pues en la "18" no había cuadro telefónico; que el traslado no se realizó.

El referido incidente con la peticionaria, lo expresa así:

"Entonces llegó al cuadro telefónico y me dijo: 'Siempre te saliste con la tuya, yo no creí que tú fueras tan sucia y tan baja.' Entonces yo le dije. 'Por qué tú me dices eso?' Y me dijo, 'Bueno porque la persona que acusa a otra es una sucia y una baja.' Entonces yo volví y le dije 'Por favor, mira, ahí hay pacientes, no me provoques en esa forma.' Entonces me dijo 'Tú no vas a tener tranquilidad ni de día ni de noche y te juro por mi madre que me las vas a pagar.' En eso llegó la Sra. Otero, estaba la Sra. Ojeda y otros testigos más.

. . . . . . . . .

P. ¿Pero no había allí otras personas que no fueran empleados, personas aparte de la administración, en el momento en que ella se expresó?

R. En el momento que ella se expresó, no; solamente la Sra. Ojeda.

P. ¿Había pacientes?

R. Sí, había muchos pacientes.

. . . . . . . . .

R. Sí, había más de 25 pacientes allí, todos estaban mirando, porque éste es Información (Indicando), aquí están los archivos, aquí está el cuadro, entonces pues ella se vino por el frente."

La Sra. Román volvió a ser llamada a declarar en una vista posterior para la presentación de nueva prueba, a lo que se opuso la peticionaria. En esta ocasión se le preguntó a qué horas vio a la peticionaria trabajando en el Comité Popular y contestó como sigue:

"R. La vi porque iba muchas veces a su casa—en varias ocasiones—y luego, como no la encontraba, yo iba al lugar donde me dijo se podía encontrar—iba varias veces—a las dos, a las tres— en horas que podía ella estar trabajando.

P. En otras palabras, cuando iba a verla era en horas . . .

R. Después que se suponía que ella no trabajaba. . . .

COMISIONADO TOLEDO: Dónde?

TESTIGO: En la Avenida Andalucía, en un comité . . . porque fuí más días cuando conseguí . . .

COMISIONADO TOLEDO: Comité de qué?

TESTIGO: Un comité Popular que queda al lado de la oficina de rentas . . .

COMISIONADO TOLEDO: Un comité de un partido político?

TESTIGO: Sí."

*Prueba de Descargo*

A. Ernesto Ramos Concepción declaró que trabaja como Oficinista I en el Dispensario López Antongiorgi; que presenció un incidente entre las señores telefonistas (Rivera y Rodrigo, la peticionaria) "más o menos" para el 25 de agosto de 1969; que ese día era su responsabilidad apuntar a los pacientes que llegaran, pues la persona encargada había faltado; que la peticionaria entró y le pidió que sacara su récord porque ella iba a ver al médico; que le entregó el récord; que la peticionaria le dijo a la Sra. Román (Rivera de Román o Rivera) que ". . . muchas gracias por todo lo bien que ella se había portado con ella. Inmediatamente la Sra. Hilda Román le dijo a la Sra. Teresa Rodrigo que en qué se basaba esta contestación que le había dado ella. Entonces la Sra. Hilda

Román le dijo que ella ya había establecido la discusión entre ambas, que ella había recibido ciertas llamadas anónimas"; que "Entonces la Sra. Teresa Rodrigo le contestó a ella que esas llamadas no podían haber sido de ella porque la persona que hacía esas llamadas era una persona baja"; que "Entonces la Sra. Hilda Román le contestó que si no las hacía la señora Rodrigo, ella las mandaba a hacer"; que en ese instante entraron otros empleados; que le dijo a la empleada Ojeda ". . . que le dijera a ambas que dejaran la discusión porque estaban frente a un público y esto les iba a afectar a las dos"; que no oyó palabras obscenas; que el tono de la discusión no era elevado; que la discusión duró aproximadamente diez minutos.

B.—Juana Zambrana Vda. de Nolla declaró que para el mes de octubre y en los primeros días del mes de noviembre de 1968 era la encargada del Comité del Precinto 6 de Puerto Nuevo del Partido Popular Democrático; que tenía que atender todo lo concerniente a la política allí; que abría la oficina a los ocho de la mañana y algunas veces estaba hasta las once y hasta las doce de la noche trabajando; que ese era el local donde se hacían los trabajos de ese comité de ese partido; que ella estaba allí "todos esos días"; que la testigo Rosa Hilda Rivera de Román ". . . iba de noche a veces a coger clases para funcionarios de colegios y eso, pero de día ella no iba por allí"; que la peticionaria ". . . de día no iba, ella iba de noche después de las siete de la noche porque ella nos ayudaba a hacer los censos, entonces en Puerto Nuevo es difícil hacer los censos de día porque la gente está trabajando y perdíamos mucho tiempo, entonces nosotros salíamos de noche desde las siete de la noche hasta las once a hacer los censos"; que la testigo les ". . . ayudaba a veces, no todas las veces . . . cuando ella podía"; que ella es viuda y puede dedicar todo el tiempo; que vive acompañada de su papá que tiene 97 años; que ella lo atiende pero le dejaba su comida preparada; que ella misma abría las oficinas localizadas en la Calle Andalucía 402 porque

ella tenía las llaves; que es vecina y amiga de la peticionaria.

Se admitió que la peticionaria recibió compensación del Municipio de San Juan durante el período a que se refieren los cargos. La peticionaria no declaró.

La prueba aducida demuestra, sin lugar a dudas, que la peticionaria estuvo ausente de su trabajo en el Centro de Diagnóstico del Municipio desde el día 16 de octubre al 4 de noviembre de 1968 y que recibió remuneración del Municipio durante dicho período.

¿Estuvo o no tal ausencia de la peticionaria debidamente autorizada?

La prueba de cargo ofrece tres explicaciones para tal ausencia, o sea:

(1) Que la peticionaria había sido prestada a la Oficina Central del Municipio—esta explicación se deriva del testimonio de la Sra. Pesante, amiga íntima de la peticionaria, testimonio que fue impugnado con una declaración jurada anteriormente prestada por la Sra. Pesante en que dijo que durante dicho período la peticionaria estuvo ausente en vacaciones regulares. Es de notar que el Alcalde no trajo a testificar a la Srta. Saldaña quien, según la Sra. Pesante, fue la empleada en la oficina central del Municipio que solicitó el traslado allí de la peticionaria. Tampoco se trajo prueba otra alguna demostrativa de que la peticionaria no hubiera sido así traslada y no estuviese trabajando en dicha oficina central durante el período en cuestión.

(2) Que la peticionaria estaba gozando de vacaciones regulares durante el período antes indicado. La Srta. Aida Cordero testificó que se llenó la forma SP-7 con respecto a vacaciones regulares de la peticionaria; que dicha forma fue firmada por la Sra. Pesante; que salió de la oficina y que como un mes después regresó devuelta sin procesarse de la Oficina de Personal. El interrogatorio de esta testigo sobre la costumbre establecida en el municipio con respecto a cuándo comienzan los empleados a tomar vacaciones, fue el siguiente:

"P. Mientras esta forma SP-7 estuvo fuera de su oficina, de la suya, ¿estuvo la Sra. Rodrigo disfrutando de vacaciones?

R. *Le repito que cuando se le llena la forma, el empleado esté disfrutando de vacaciones, se supone* . . .

P. *Una vez se le llena está disfrutando de vacaciones.*

R. *Sí, señor.*

P. *O sea, una vez se llena y sale de la oficina, ya empieza a disfrutar de vacaciones.*

R. *Se supone que sí a menos que haya algún* . . . ¿*verdad? que no se le dé curso a las vacaciones allá o por necesidad del servicio.* [Énfasis nuestro.]

P. Que no se le dé curso.

R. A las vacaciones.

P. Quiere usted decir que la forma SP-7 no sea aprobada por Personal.

R. Sí, señor.

P. O por la Oficina Central.

R. Sí, señor.

P. Pero mientras tanto, ella sí estuvo disfrutando de vacaciones.

R. Bueno, ella estuvo ausente.

P. Estuvo ausente de su oficina.

R. Sí, señor.

P. Y cuando regresa la forma a su oficina es como un mes más tarde.

R. Aproximadamente.

P. Ya ella está de regreso en la oficina, ¿correcto?

R. Eso yo no se lo podría contestar.

P. Pero usted dice que aproximadamente un mes después de salir la forma de la oficina suya, la devuelven a su oficina, regresa a su oficina. Eso sería entonces aproximadamente del 15 al 20 de noviembre.

R. Bueno, la forma lleva la fecha esa en que comienza y la fecha en que termina. Para la fecha en que terminaba, según la forma, se suponía que ella se reintegrara.

P. Ahora, la pregunta mía es si para la fecha en que regresa la forma sin procesar, sin aprobación, si ya había regresado la Sra. Rodrigo a su trabajo.

R. Déjeme decirle que no recuerdo.

P. No recuerda.

R. No señor.

P. Quiere esto decir que no se le cargó a la Sra. Rodrigo en su récord como que ella había disfrutado de vacaciones porque no se aprobó la forma ¿correcto?

R. Bueno, de eso no sé, porque solamente yo me limitaba a llenar la forma y a que saliera y luego esperar a que llegara una forma rosa, que es la que devuelven de Personal.

P. Dígame, ¿La forma SP-7 vino devuelta desaprobada?

R. Completa, vino completa, sí.

P. ¿Completa? ¿Qué quiere decir completa?

R. Sí, señor, o sea que no la aprobaron.

P. No la aprobaron.

R. No, señor.

P. Nada más."

Este testimonio sostiene la explicación de que la peticionaria se ausentó durante el referido período siguiendo la costumbre de comenzar las vacaciones tan pronto se llena la forma SP-7, y continuó ausente en vacaciones ya que no se le notificó a tiempo que éstas habían sido desaprobadas. Por supuesto, que en este caso en particular puede exigirse a la empleada el reintegro de la remuneración pagada durante la referida ausencia en vista de que las referidas vacaciones no se aprobaron en definitiva. Y para lo sucesivo, podría establecerse la norma de que ningún empleado se ausente en vacaciones hasta que la solicitud de éstas haya sido debidamente aprobada. Para esto, debe tramitarse la solicitud de vacaciones con razonable prontitud.

(3) Que la ausencia de la peticionaria se debió a que para el período a que se refieren los cargos la peticionaria trabajaba en el Comité de Puerto Nuevo del Partido Popular Democrático. La Sra. Román inicialmente dijo no recordar las fechas ni las horas en que específicamente había visto en el referido Comité a la peticionaria aunque sí afirmó que había sido octubre y noviembre de 1968. Al sentársele a declarar nuevamente en una vista celebrada en una fecha posterior para la presentación de nueva prueba, afirmó que la había

visto "... a las dos, a las tres—en horas que podía ella estar trabajando—."

De todos modos, el segundo testimonio de la Sra. Román no es confiable pues viene a cubrir una laguna esencial en su testimonio original sobre lo cual dijo no recordar. Hubo que volverla a traer para así testimoniar indudablemente debido al testimonio de la Sra. Nolla al efecto de que la peticionaria iba de noche, y no de día, a ayudar a hacer los censos de determinado partido político en determinado lugar.

La prueba demostró que la peticionaria trabajaba un turno de 4 horas cada día. Ninguno de los testigos de cargo testificó que durante uno o más de esos turnos de trabajo la peticionaria abandonó su empleo para dedicarse a trabajar en un comité de un partido político.

■ Dijimos en *Lebrón*, supra, que la destitución de un empleado es una medida drástica. La prueba previamente reseñada no demuestra que la ausencia de la peticionaria de su trabajo regular fue un abandono de servicio de carácter vicioso, sin justificación razonable. Tampoco demuestra que tal ausencia constituyese un descuido o negligencia en el desempeño de sus funciones.

Por el contrario, la prueba de cargo ofrece sólo dos explicaciones para dicha ausencia. La primera, o sea, el traslado de la peticionaria a la oficina central del municipio no fue creída por el tribunal de instancia, con razón a nuestro juicio. La segunda, o sea, que se ausentó de vacaciones de acuerdo con la costumbre establecida de tomarlas tan pronto se llena el formulario SP-7 y salió éste de la oficina donde trabajaba la peticionaria, fue indubitablemente establecido por la prueba. No puede concluirse, por lo tanto, que la ausencia de la peticionaria de su trabajo regular fue "sin la debida autorización" al extremo de justificar castigo alguno y menos aún el más drástico de todos como es el de la destitución.

En cuanto al cargo de conducta desordenada, incorrecta o lesiva al buen nombre del municipio, no podemos convenir que

las palabras cruzadas entre la peticionaria y la Sra. Román a las 7:30 de una mañana junto al cuadro telefónico del Centro de Diagnóstico donde ambas trabajaban, en que no mediaron palabras obscenas, ni riña ni acometimiento de ninguna parte, y que cesó tan pronto intervino otra empleada, constituyan tal conducta desordenada, incorrecta o lesiva, que justifique el castigo extremo de la destitución.

En vista de lo expuesto, concluimos que el tribunal de instancia incidió al sostener el dictamen de la Comisión para Ventilar Querellas contra Empleados y Funcionarios Municipales, toda vez que no se adujo prueba que lo sostuviera y, por el contrario, la prueba de cargo reveló que la peticionaria se encontraba ausente de vacaciones durante el período entre el 16 de octubre y el 4 de noviembre de 1968. Por lo tanto, debe *revocarse la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 8 de noviembre de 1971. En su lugar, se debe ordenar la restitución de la peticionaria a su cargo de telefonista con el correspondiente pago de los salarios dejados de percibir por ésta desde su destitución, menos la remuneración que se le pagó mientras estuvo ausente de su empleo entre el 16 de octubre y el 4 de noviembre de 1968.*

El Juez Asociado, Señor Martín, concurre en el resultado.