# 2003 DTA 125

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL I DE SAN JUAN, PANEL IV**

GEORGINA ORTIZ TIRADO
Recurrente

v.

ADMINISTRACION DE LOS SISTEMAS DE RETIRO DE LOS
EMPLEADOS DEL GOBIERNO Y LA JUDICATURA
Recurrida

Núm. KLRA-2003-00275

San Juan, Puerto Rico, a 29 de julio de 2003

Panel integrado por su Presidente, el Juez Gierbolini,
y los Jueces Cordero y Rodríguez Muñiz

Rodríguez Muñiz, Juez Ponente

RECEIVED
DEC 22 2003
SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

## TEXTO COMPLETO DE LA RESOLUCION

La Sra. Georgina Ortiz Tirado, (en adelante la recurrente), presentó solicitud de revisión el 22 de abril de 2003. Nos solicita la revisión de la Resolución emitida por la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (en adelante, la Junta), el 19 de diciembre de 2002, archivada en autos copia de su notificación el 14 de febrero de 2003.

A continuación exponemos brevemente el trasfondo fáctico y procesal del caso.

### I

La recurrente es una ex empleada de la División de Normas del Trabajo, adscrita al Departamento del Trabajo y Recursos Humanos. Se desempeñó en este Departamento como Investigadora de Normas en la oficina de Bayamón por espacio de seis años y medio (6.5), los cuales fueron acreditados a las aportaciones de Retiro.

El 31 de octubre de 1990, reportó un accidente laboral descrito como crisis nerviosa. Fue dada de alta sin incapacidad, el 4 de abril de 1991.

La recurrente continuó en su trabajo; sin embargo, el 20 de junio de 1994, sufrió otro accidente el cual consistió en que, mientras realizaba las labores propias de su puesto, sintió dolor de cabeza, espalda, brazo izquierdo, cintura, pierna derecha y cuello. En consecuencia, visitó el Fondo del Seguro del Estado (en adelante, el Fondo). Allí le diagnosticaron *"cervical strain"*, *"lumbar strain"* y *"bilateral CTS"*. Le concedieron diez por ciento (10%) de incapacidad por el *"cervical strain"*, cinco por ciento (5%) por el *"lumbar strain"* y quince y veinte por ciento (15 y 20%) por la muñeca derecha e izquierda, respectivamente. Además, le brindaron tratamiento médico hasta el 9 de enero de 1997, fecha en que fue dada de alta. ■

El 7 de febrero de 1997, la recurrente presentó ante la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (en adelante, la recurrida), una solicitud de incapacidad ocupacional bajo la Ley 447. En ésta alegó que desde el 14 de junio de 1994 ha padecido del *"Carpal Tunnel"* de ambas manos, dolor de cabeza, cuello, espalda y hombros, migraña, esclerosis, deficiencia en las venas de las piernas, espolones en la planta del pie, espasmos y miositis. Atribuyó los síntomas a haber estado escribiendo constantemente, así como utilizando el teléfono y cargando un bulto en el hombro, que le fue pillando los nervios y los discos de la espalda. Añadió que caminar en la calle le afectó las piernas y que siente espasmos, miositis y fuertes dolores de cabeza. Indicó, además, que tenía una reclamación ante el Fondo y que se había realizado las siguientes pruebas relacionadas a su condición: (i) *"CT Scan"*, (ii) placas *"Doplex"* de las piernas, (iii) pruebas de aguja, y (iv) operaciones ambulatorias. ■ **Exhibit 3**, paginas 4-8.

El 29 de diciembre de 1997, la recurrida le notificó a la recurrente que no daría curso a la Solicitud de

Pensión por Incapacidad Ocupacional presentada por ella. La razón que expuso para la denegatoria fue que, basándose en los informes médicos que surgían del expediente, la recurrente no estaba incapacitada para trabajar. **Exhibit 4**, páginas 9-11.

El 16 de enero de 1998, la recurrente presentó una solicitud de reconsideración. Adujo que tanto su condición fisiológica, neurológica como la emocional, habían estado empeorando constantemente. **Exhibit 5**, página 12.

El 26 de enero de 1997, la recurrida señaló una vista administrativa para el 18 de febrero de 1998, con el propósito de evaluar la solicitud de reconsideración presentada. **Exhibit 6**, página 13.

Posteriormente, la Oficina de Reconsideraciones de la recurrida devolvió el caso al Area de Determinación de Incapacidad, a los fines de que éstos evaluaran prueba adicional. El 21 de julio de 1999, luego de la reevaluación de prueba, se reafirmó en la denegatoria. **Exhibit 11**, páginas 51-52.

El 24 de agosto de 1999, la recurrente presentó solicitud de reconsideración y señalamiento de vista. Basó su solicitud en las condiciones reconocidas por el Administrador del Fondo. Adujo que de acuerdo a ellas, estaba incapacitada para llevar acabo las funciones relacionadas a su empleo o cualquiera otra. **Exhibit 12**, página 53.

El 9 de septiembre de 1999, con el propósito de evaluar la solicitud de reconsideración presentada, la recurrida señaló vista administrativa para el 7 de octubre de 1999. **Exhibit 13**, página 54.

El 7 de agosto de 2000, la recurrida denegó la solicitud de reconsideración. Concluyó, en síntesis, que de acuerdo con la prueba médica que obraba en el expediente, la recurrente no llenaba los criterios de severidad para los beneficios de incapacidad solicitados. **Exhibit 14**, página 55.

El 24 de agosto de 2000, la recurrente presentó escrito de apelación ante la Junta. Alegó que de acuerdo con la evidencia médica ofrecida, cumplía con lo establecido en el Artículo 9 de la Ley 447 y con la Regla 24 del Reglamento General para Concesión de Pensiones, Beneficios y Derechos. **Exhibit 15**, páginas 64-65.

El 29 de diciembre de 2002, la recurrida presentó contestación a la apelación. En ésta, señaló que era necesario que la recurrente probara que estaba total y permanentemente incapacitada, de manera tal que no le fuera posible realizar ningún trabajo. **Exhibit 16**, páginas 66-67.

El 28 de febrero de 2002, la Junta señaló vista pública para el 10 de abril de 2002. **Exhibit 17**, páginas 68-69. La misma se celebró conforme a calendario. Compareció la recurrente, quien fue la única testigo, representada por abogado y la representación legal de la recurrida. **Exhibit 18**, páginas 70-89.

El 19 de diciembre de 2002, notificada el 14 de febrero de 2003, la Junta emitió resolución. Al hacer su análisis, la Junta discutió la condición emocional y física de la recurrente por separado. En cuanto a la condición emocional, determinó que la misma no era incapacitante; por lo tanto, no le concedió compensación alguna bajo la Ley 447. Adujo que la recurrente había estado recibiendo tratamiento médico privado y, por tanto, la condición que se trataba no era relacionada a su empleo. En cuanto a las condiciones físicas, concluyó que del récord médico no surgía que las mismas fueran incapacitantes. Añadió que los médicos que habían concluido que la condición sí lo era, se habían basado en condiciones existentes, pero que no estaban relacionadas al trabajo y, por lo tanto, no debían ser tomadas en consideración, ya que la recurrente no cuenta con el mínimo de diez (10) años en su empleo, requeridos para reclamaciones basadas en incapacidad no ocupacional. Reconoció que las condiciones que sufre la recurrente la limitan, pero concluyó que ésta podría trabajar si era reinstalada de acuerdo a las guías para un acomodo razonable. ██ Por último, señaló que el hecho

de que el Seguro Social le hubiera aprobado beneficios, no significaba que la recurrida tuviera el deber de actuar conforme a ello. En consecuencia, confirmó la determinación emitida por la recurrida. **Exhibit 19**, páginas 90-101.

El 6 de marzo de 2003, la recurrente presentó moción de reconsideración, la cual no fue acogida por la Junta. **Exhibit 20**, páginas 102-104.

Inconforme, la recurrente acudió ante nos y señaló la comisión del siguiente error:

*"Erró la Honorable Junta de Síndicos al determinar que la apelante-recurrente no está incapacitada o imposibilitada para desempeñarse en el servicio público, sin considerar los factores médico-vocacionales a base de las limitaciones impuestas por sus condiciones, las cuales surgen del expediente y que le impiden desempeñarse en el servicio público."*

Por los fundamentos que exponemos a continuación, denegamos la expedición del recurso presentado.

## II

El Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y la Judicatura fue instituido mediante la Ley Núm. 447 de 15 de mayo de 1951, 3 L.P.R.A. sec. 761 *et seq.,* con el propósito de proveerle al empleado público un seguro de dignidad, de forma tal que luego de haber dedicado al servicio público sus años fecundos, no se encuentre en la etapa final de su vida en el desamparo, o convertido en carga de parientes o del Estado. *Ramos Rivera v. E.L.A.,* 148 D.P.R. 118, 124 (1999); *Bayrón Toro v. Serra,* 119 D.P.R. 605, 616 (1987). Este estatuto es uno de carácter remedial que persigue favorecer a los empleados cubiertos por el mismo. *Morales v. Adm. Sistemas de Retiro,* 123 D.P.R. 589, 595 (1989). Constituye para el empleado un beneficio marginal de su empleo de considerable importancia. A su vez, dicho plan de retiro representa para el patrono *"un incentivo que facilita el reclutamiento y retención del personal de calidad"*, lo que también *"hace posible la renovación periódica de sus recursos humanos según los empleados de más edad se acogen a los beneficios de jubilación"*. *Bayrón Toro v. Serra, supra,* a la página 616. Fue dentro de este marco conceptual que por virtud del Artículo 9, 3 L.P.R.A. sec. 769, se confirió a los participantes del Sistema el derecho a recibir una anualidad por incapacidad ocupacional, pero ello conforme a las condiciones y limitaciones impuestas por la propia ley, disponiendo en lo pertinente dicho artículo como sigue:

*"Todo participante que, como resultado de una incapacidad que se origine por causa del empleo y surja en el curso del mismo, quedare incapacitado para el servicio, tendrá derecho a recibir una anualidad por incapacidad ocupacional, siempre que:*

*(a) Se recibiere suficiente prueba médica en cuanto a la incapacidad mental o física del participante conforme a los criterios que mediante reglamento fije el Administrador;*

*(b) El participante o el patrono, de acuerdo con los reglamentos de la Junta, notifique al Administrador con respecto a dicha incapacidad [y,]*

*(c) [q]ue el Fondo del Seguro del Estado determine que el accidente o enfermedad provino de cualquier función del trabajo o que sea inherentemente relacionado al trabajo o empleo;*

*(d) El participante tendrá que radicar la solicitud, sustentada con suficiente prueba médica, dentro de los ciento ochenta (180) días en que se relacione la condición por la cual radica su solicitud."*

Para los fines de una anualidad por incapacidad, sea esta ocupacional o no ocupacional, se considerará incapacitado a un participante cuando la incapacidad esté sustentada con suficiente prueba médica conforme a

los criterios que mediante reglamento fije el Administrador y dicha prueba refleje que el participante está imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado. Art. 11 de la Ley 447, 3 L.P.R.A. sec. 771.

Estos requisitos también fueron incorporados al Reglamento General Núm. 4930, adoptado el 22 de abril de 1993, por la Administración para la Concesión de Pensiones, Beneficios y Derechos. La Regla 24.2 de dicho Reglamento dispone que para tener derecho a una pensión por incapacidad ocupacional, debe establecerse, entre otros requisitos, que el participante ha presentado *"suficiente prueba médica en cuanto a su incapacidad mental o física"* y que el Fondo del Seguro del Estado haya determinado que la condición incapacitante está relacionada con el empleo del participante y es compensable. Del mismo modo, en la Regla 24.4 se establece que se considerará capacitado al participante si éste no está total y permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier cargo que su patrono le hubiere asignado o para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos igual a la que esté percibiendo.

Claramente se desprende de las disposiciones antes citadas, que para que un empleado del gobierno sea acreedor a una pensión por incapacidad ocupacional bajo el Sistema de Retiro de los Empleados del Gobierno, la incapacidad del empleado público debe ser de tal naturaleza que le inhabilite para desempeñar las funciones de su empleo y de cualquier otro empleo remunerativo. *Sánchez v. A.S.R.E.G.J.,* 116 D.P.R. 372, 376 (1985). Le corresponde así probar a satisfacción del Administrador de dicha agencia dos cosas: en primer lugar, que su incapacidad es total y permanente y, en segundo lugar, que la misma es de tal naturaleza que le impide desempeñar los deberes que su patrono le hubiera asignado o trabajar en cualquier otro empleo que no sea el que desempeña al momento de solicitar la pensión, pero cuya retribución no sea menor a la de dicho empleo. Este es el *quántum* de prueba con el que hay que cumplir ante la Administración de los Sistemas de Retiro. Ahora bien, la incapacidad debe ser *"sustentada con suficiente prueba médica"*. 3 L.P.R.A. sec. 771. La concesión de los beneficios por incapacidad ocupacional va a depender de la prueba que presente la persona que pretende recibir los beneficios. Por ello, es necesario suficiente prueba médica tendente a demostrar la incapacidad según se define por el Sistema de Retiro de los Empleados del Gobierno y la Judicatura.

Por otro lado, la Regla 66 de nuestro Reglamento, 4 L.P.R.A. Ap. XXII-A, dispone:

*"El Tribunal tomará en consideración los siguientes criterios al determinar si expide un auto de revisión o una orden de mostrar causa:*

*(A) Si la regla o el reglamento, de su faz, incumplen las disposiciones de ley, o si se impugna el procedimiento seguido al adoptar dicha regla o reglamento.*

*(B) Si el remedio y la disposición de la orden, resolución o decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho, o producto de una actuación arbitraria, ilegal o irrazonable.*

*(C) Si la decisión recurrida no está apoyada por evidencia sustancial.*

*(D) Si la expedición del auto o de la orden de mostrar causa evita el fracaso de la justicia."*

La Regla 66 de nuestro Reglamento, 4 L.P.R.A. Ap. XXII-A, es la rectora de los criterios para la expedición del auto de revisión.

El comentario a la Regla 66 expone parcialmente:

*"...[N]ada de lo aquí dispuesto puede entenderse como variación a las normas del derecho administrativo en cuanto a la presunción de corrección, el principio de especialización, la no sustitución de criterios de ley y*

*el respeto y consideración que dicho foro merece ante el foro judicial; las cuales sólo ceden ante una actuación arbitraria, ilegal o irrazonable o ante determinaciones huérfanas de prueba sustancial en la totalidad del récord pertinente. Véase Fuertes y otros v. A.R.P.E. 134 D.P.R. 947 (1993); P.R.T.C. v. Unión Indep. Emp. Telefónicos, 131 D.P.R. 171 (1992); P.R. Tel. Co. v. Tribunal Superior, 102 D.P.R. 231 (1974); Rodrigo v. Tribunal Superior, 101 D.P.R. 151 (1973); A.P.I.A.V., Inc. v. Srio. de Hacienda, 100 D.P.R. 173 (1971); Román v. Superintendente de la Policía, 93 D.P.R. 685 (1966); Hilton Hotels v. Junta Salario Mínimo, 74 D.P.R. 670 (1953)".*

## III

En el caso de autos, la recurrente señaló como único error que la Junta erró al determinar que no estaba incapacitada mentalmente sin haber considerado los factores médico-vocacionales a base de las limitaciones impuestas por sus condiciones.

La resolución emitida por la Junta discute, en síntesis, tres aspectos de la reclamación de la recurrente, a saber: la condición emocional, la condición física y la posibilidad de otorgar los beneficios mediante compensación no-ocupacional, toda vez que del expediente surge prueba médica de condiciones que no fueron relacionadas al empleo de la recurrente.

En cuanto a la condición emocional de la recurrente, la Junta concluyó que la misma no estaba relacionada al trabajo; por lo tanto, el error señalado resulta improcedente, toda vez que la condición emocional de la recurrente no fue el factor determinante en la decisión emitida por el organismo administrativo. En cuanto a la condición física, la Junta determinó, basándose en la evidencia médica presentada, que la condición existente en la recurrente no era incapacitante. Es decir, que no le corresponden los beneficios por incapacidad, ya que se requiere probar con suficiencia médica que la incapacidad del solicitante es total y permanente. ■ Finalmente, la Junta descartó la posibilidad de conceder los beneficios por incapacidad no ocupacional debido a que la recurrente había sido empleada del Estado por sólo seis años y medios (6.5) cuando la ley requiere un mínimo de diez (10) años para poder otorgar esta compensación.

En síntesis, el factor determinante en la decisión que adoptara la Junta con relación al caso que nos ocupa fue la condición física de la recurrente. No habiendo sido ésta objeto de señalamiento de error por parte de la recurrente y no habiendo encontrado error, prejuicio o parcialidad en la resolución recurrida, denegamos la expedición del recurso solicitado.

## IV

Por los fundamentos antes expuestos, denegamos la expedición del auto solicitado.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau<br>Secretaria General

### ESCOLIOS 2003 DTA 125

**1.** Posteriormente, continuó recibiendo tratamiento médico privado. El Dr. Roberto Vera Rodríguez, Generalista, la trata desde el 10 de agosto de 1994 y el Dr. Ángel L. Rodríguez Gómez, Siquiatra, desde enero de 1995.

**2.** No especifica cuáles exactamente.

**3.** A pesar de que la Junta concluyó así, no especificó cuáles eran estas guías, a cuál área sería reasignada, ni en qué consistiría el acomodo razonable.

**4.** Surge del expediente que la incapacidad de la recurrente era por espacio de doce (12) meses, contados a partir del 2 de febrero de 1997, fecha en la cual la recurrente fue evaluada por la doctora Rodríguez Gómez. Refiérase a la página 115 del apéndice del escrito de Revisión Judicial.