ALAIN TASCA, FRED FELG, GRACIELA G. ALCARAZ, KETTY CABAN, SR. FRANK A. DALMAU JIMENEZ ELOY SIMONS, ALBERTO PICO SANTIAGO, SYLVIA NEVAREZ, IGNACIO P. FERNANDEZ, MARTA DALMAU
Recurrentes

v.

ASOCIACION DE RESIDENTES CALIDAD DE VIDA VECINAL, INC.
MUNICIPIO DE SAN JUAN
Agencia Recurrida

Núm. KLCE-95-01036

San Juan, Puerto Rico, a 5 de febrero de 1996

Panel integrado por su presidente, Juez Rossy García y los Jueces Aponte Jiménez y Negroni Cintrón

Rossy García, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

El recurso instado en el caso de epígrafe interesa la revisión de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (Hon. Angel G. Hermida). Dicho dictamen declaró No Ha Lugar la Petición de Revisión instada ante ese foro por los opositores-recurrentes. Sostuvo así la decisión del Municipio de San Juan autorizando el control de acceso solicitado por la Asociación recurrida de epígrafe, según modificado por la Asamblea Municipal.

Inconforme con tal determinación, los opositores-recurrentes interpusieron el recurso que nos ocupa en el que imputan, en el único señalamiento de error que levantan, que incidió el tribunal recurrido al determinar que existe *"evidencia sustancial"* en el expediente administrativo para justificar la autorización que es objeto de impugnación.

Por los criterios que pasamos a exponer a continuación, resolvemos que resulta procedente denegar la expedición del auto solicitado.

### I

Por la naturaleza del error imputado, debemos comenzar señalando que los procedimientos y las decisiones de un organismo administrativo tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla. *Facultad de las Ciencias Aplicadas v. Consejo de Educación Superior,* ___ D.P.R. ___ (1993), **93 J.T.S. 88.** Así, si la decisión impugnada está sostenida por evidencia sustancial, que es *"aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión",* Hilton Hotel v. Junta de Salario Mínimo, 74 D.P.R. 670 (1954), la misma debe ser confirmada. *Rodríguez Pagán v. Depto. de Servicios Sociales,* ___ D.P.R. ___ (1993), **93 J.T.S. 14,** a la pág. 10783; *Henríquez v. Consejo de Educación Superior,* 120 D.P.R. 194, 210 (1987). En lo atinente a la regla de la evidencia sustancial, incorporada en la sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2175, ▆ la misma impone al tribunal revisor la obligación de examinar toda la evidencia obrante en el expediente, incluso la que razonablemente reduzca o menoscabe el peso de la determinación objetada, para auscultar si ésta es sustancial o no. *Rodrigo v. Tribunal Superior,* 101 D.P.R. 151, 154-155 (1973). De existir un conflicto razonable y auténtico en la prueba, el tribunal debe considerar como decisivo la determinación administrativa, siendo concluyente aquella que tenga una base racional. Hilton Hotels, *supra,* Con la adopción de esta regla se pretende evitar que, mediante la revisión judicial, se sustituya el criterio del organismo administrativo por el del foro revisor en la actuación llevada a cabo por aquél, la cual generalmente versa sobre materia especializada. *López v. Junta de Planificación,* 80 D.P.R. 646, 673 (1958).

En armonía con la finalidad perseguida, la revisión judicial de decisiones administrativas debe limitarse a determinar si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su

actuación constituyó un abuso de discreción. *Torres González v. Star Kist Caribe,* ___ D. P.R. ___ (1994), **94 J.T.S. 5,** a la pág. 11458; *Fuertes v. Administración de Reglamentos y Permisos,* ___ D.P.R. ___ (1993), **93 J.T.S. 165,** a la pág. 11385; *Murphy Bernabe v. Tribunal Superior,* 103 D.P.R. 692, 699 (1975). Así, el estándar de revisión judicial en materia de decisiones administrativas consiste en resolver si existe una base racional respaldada por evidencia sustancial que sostenga la decisión o interpretación impugnada. Si la totalidad del expediente administrativo sostiene las determinaciones adoptadas por la agencia, y la interpretación de sus guías, reglas o reglamentos es razonable y compatible con el propósito de la ley, los tribunales no deben sustituirlos por su propio criterio. Es decir, los tribunales deben limitarse en el ejercicio de su función revisora de decisiones de los organismos administrativos, a indagar sobre la razonabilidad de las mismas y no deben intervenir con éstas, *M & V Orthodontics v. Negdo. Seg. Empleo,* 115 D.P.R. 183, 188-189 (1984), *"a menos que se infrinja[n] directamente valores constitucionales fundamentales, [o] cuando las actuaciones de estos organismos sean claramente arbitrarias".* Henríquez v. Consejo de Educación Superior, supra, a la pág. 212.

Aclarado el alcance de nuestra función revisora, veamos ahora el trasfondo fáctico del caso que nos ocupa, según surge del recurso instado y la totalidad de los documentos sometidos por la aquí recurrente. Determinaremos luego si la parte recurrida cumplió con las exigencias legales y reglamentarias necesarias para la concesión de un permiso de control de acceso, así como si la decisión del Municipio de San Juan que es objeto de impugnación está apoyada por evidencia sustancial obrante en el expediente administrativo.

## II
La proponente-recurrida, Asociación de Residentes Calidad de Vida Vecinal, Inc., en adelante la Asociación, es una organización sin fines de lucro debidamente constituida, representativa de los residentes de la Urbanización Ocean Park en Santurce. Dando virtualidad a lo decidido por sus miembros como resultado de varias asambleas celebradas en el año de 1992, ■ la Asociación cursó una comúnicación dirigida al alcalde de San Juan relacionada con sus propósitos respecto a la seguridad vecinal. A tales efectos, y al amparo de las disposiciones de la Ley Núm. 21 de 20 de mayo de 1987, según enmendada, 23 L.P.R.A. sec. 64 *et seq.,* dicha entidad oportunamente presentó una solicitud ante la División de Bienes Inmuebles, Sección de Control de Accesos de la División de Asuntos Legales del Municipio de San Juan, encaminada a que se les autorizara a establecer un control de acceso vehicular en la urbanización de referencia. La propuesta originalmente sometida pretendía la vigencia de ese control vehicular las veinticuatro horas del día, convirtiéndose el mismo, durante las horas nocturnas, en uno de control vehicular y parcialmente peatonal. Luego del trámite correspondiente y haber sometido dicha asociación de residentes los documentos, certificaciones y demás exigencias requeridas por la referida ley, se señaló vista pública para la ventilación de dicha solicitud, la que se celebró el 20 de abril de 1993. ■ En ocasión de la misma participaron los proponentes del proyecto, algunos vecinos y particulares que tenían oposición al mismo, así como representantes de las agencias concernidas, las cuales sometieron sus recomendaciones y expusieron su posición en torno a la solicitud. Ello dio base a investigaciones independientes por parte del Municipio y consultas con otras agencias del ejecutivo.

Luego del trámite correspondiente, el Municipio denegó el proyecto tal y como fue originalmente presentado por la Asociación de Residentes. En su lugar, mediante el Informe. y Recomendación suscrito por la Oficina de Control de Accesos, se sometió un proyecto sustituto ante la consideración de la Asamblea Municipal, ■ cuerpo legislativo que debía emitir un dictamen preliminar incluyendo las modificaciones incorporadas por virtud del resultado de las vistas y en armonía con las condiciones exigidas por las agencias concernidas. Así las cosas, y a tenor con las recomendaciones vertidas en el informe, con fecha de 29 de septiembre de 1994 la Asamblea Municipal aprobó dicho proyecto sustituto mediante la Resolución Núm. 26, Serie 1994-95, la cual recogió los términos de la misma. ■

Aprobada como fue dicha resolución, el Municipio procedió a cursar debida notificación a las partes el 4 de noviembre de 1994. A tenor con la disposición de ley que requiere la ratificación de los residentes cuando el municipio ha modificado lo originalmente propuesto, ■ la resolución de la Asamblea Municipal fue avalada por el 83% de los propietarios de Ocean Park comprendidos en el área sujeta a control de acceso. La conformidad con la misma fue comúnicada oportunamente a la

Oficina de control de acceso el día 18 del mismo mes y año mediante la presentación de las declaraciones juradas sometidas por la Asociación de acuerdo a lo ordenado por esa misma disposición. ▪ Reconociendo dicho cumplimiento, el día 20 de junio de 1995 la oficina de referencia, *"[e]n armonía con lo dispuesto en la sección 3 de la Ley Número 21 de 20 de mayo de 1987, según enmendada, [certificó] que la Asociación de Residentes Calidad de Vida Vecinal Inc., ha cumplido con todos los requisitos de ley y que aprobó el dictamen preliminar...quedando en vigor la Resolución Número 26 serie 1994-95"*, ▪ autorizando el control de acceso según modificado por la Asamblea Municipal.

Notificada como fue dicha determinación e inconforme con la misma, los aquí recurrentes presentaron recurso de revisión ante el Tribunal Superior, Sala de San Juan, argumentando, al igual que lo hace ante nos, la inexistencia de evidencia sustancial en el expediente para apoyar la decisión autorizando el control de acceso solicitado. Así, expone que faltan los endosos de varias agencias concernidas; que se incumplió con la Ley de Política Pública Ambiental, Ley 9 de 18 de junio de 1970, 12 L.P.R.A. sec. 1121 *et seq.*; así como que no se evaluó la compatibilidad de la acción propuesta con el Plan de Usos de Terrenos de la Región Metropolitana de San Juan. ▪

Considerado como fue dicho recurso, el Tribunal emitió la sentencia ahora recurrida declarándolo No Ha Lugar. Al así dictaminar resolvió que *"un examen de los documentos del expediente administrativo del caso que fueron incluidos en los referidos apéndices demuestran que hay en dicho expediente suficiente evidencia para sostener la decisión del Municipio de San Juan en el caso"*. ▪ según ya indicado, concurrimos con tal criterio por lo que resulta procedente denegar la expedición del auto solicitado.

### III

Mediante la aprobación de la Ley Núm. 21 de 20 de mayo de 1987, *supra*, la Asamblea Legislativa de Puerto Rico autorizó originalmente a la Junta de Planificación a conceder permisos o autorizaciones para el control del tráfico de vehículos de motor y el uso público de las calles en urbanizaciones o comunidades residenciales públicas o privadas, con un sólo acceso de entrada o salida o que tengan más de un acceso de entrada o salida pero que ninguna de sus vías públicas se use para la entrada o salida de otra calle, urbanización o comunidad que no haya solicitado el control de acceso. según surge de la exposición de motivos de dicha ley, su propósito fue autorizar a determinadas comunidades a *"controlar la entrada a sus calles dentro del área residencial"* y permitirles *"participar en la lucha contra el crimen al establecer mecanismos que controlen los accesos"*, disminuyendo de este modo *"la labor de vigilancia, ya sobrecargada, que presta la Policía de Puerto Rico"*. 22 Leyes de Puerto Rico a la pág. 67 (1987).

Por virtud de la aprobación de la Ley Núm. 156 de 10 de agosto de 1988, enmendatoria de la ley de referencia, dicha potestad fue transferida a los municipios de Puerto Rico, concediendo que son éstos los autorizados a otorgar dichos permisos *"sujeto a las condiciones y requisitos establecidos en...este título y el reglamento que adopte la Junta de Planificación de Puerto Rico"*. 23 L.P.R.A. sec. 64 (d). Armonizando dicha transferencia de facultades con las disposiciones aplicables de la sec. 4054(o) de la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4001 *et seq.*, en el sentido de que *"[C]orresponde a cada municipio...establecer, con el asesoramiento de la Junta de Planificación de Puerto Rico, las condiciones y requisitos necesarios para la concesión de autorizaciones para el control de acceso vehicular y de las calles..."*, observamos que la intención del legislador fue delegar en los municipios dicha función y limitar la intervención de la Junta de Planificación a una de asesoría mediante la promulgación de reglamentos al respecto. Huelga decir que los municipios, al descargar la misma, vienen obligados a observar los requisitos que la Junta exige mediante dichos reglamentos.

De acuerdo al esquema adoptado, la concesión de un permiso para el control de acceso a una comunidad requiere, inter alia, la existencia de un Consejo, Junta o Asociación de Residentes debidamente incorporada y en funciones; la aprobación de tres cuartas (3/4) partes de los propietarios de las viviendas allí establecidas; y que la comunidad se comprometa y presente garantías de que habrá de asumir los gastos de *"instalación, operación y mantenimiento"* de las facilidades necesarias para el control de acceso a la misma. 23 L.P.R.A. sec. 64a (Supl. 1995). Se exige, además, la celebración de vistas públicas con previa notificación a los residentes de las urbanizaciones, calles y

comunidades residenciales adyacentes, así como la obtención de endosos de varias agencias administrativas, las cuales se indican en la ley. Estas son el Departamento de Transportación y Obras Públicas, la Policía de Puerto Rico, el Cuerpo de Bomberos de Puerto Rico, la Autoridad de Energía Eléctrica, la Autoridad de Acueductos y Alcantarillados y el Servicio de Correos. Se incluye, además, al Departamento de Recursos Naturales y a la Autoridad Metropolitana de Autobuses cuando existen las situaciones consideradas por el estatuto, *"y a cualesquiera otras agencias de servicios públicos que el municipio estime necesario o conveniente"*. (Enfasis suplido). Se dispone también que cada agencia concernida deberá indicar por escrito si endosa o no el control de acceso propuesto, expresando sus razones si el endoso es negativo. Además, de proponer modificaciones y condiciones, la agencia debe indicarlas y justificarlas claramente, añadiendo que la no comparecencia por escrito de una agencia antes de concluir la primera vista pública constituirá un endoso a dicho control en la forma y extensión propuesta en la solicitud al efecto. También dispone el estatuto que:

*"....la autorización estará igualmente sujeta a que no se imposibilite cumplir con la reglamentación vigente sobre acceso a las palabras; que no se imposibilite o dificulte a los residentes externos a la comunidad el uso y disfrute de las instalaciones deportivas, recreativas y de otras facilidades comunales ni se imposibilite recibir servicios de las instituciones privadas, como escuelas, iglesias, hospitales, clubes cívicos y otros, ubicados en la comunidad y que no constituya una barrera física o arquitectónica a ciudadanos impedidos; derechos que se divulgarán al público mediante la colocación de rótulos visibles a las entradas de las comunidades que disfruten del sistema de control de acceso ...identificándose en dichos rótulos las instalaciones y facilidades públicas existentes en dicha comunidad."* 23 L.P.R.A. sec. 64b (Supl. 1995).

En todos los casos, deberá garantizarse el libre acceso a la Policía, Bomberos o cualquier otro servicio de emergencia, incluyendo los servicios de ambulancias públicas y privadas y de los empleados de las corporaciones públicas, sus agentes o contratistas que ofrecen servicio de agua, energía eléctrica, teléfono o recogido de desperdicios sólidos y de los funcionarios o empleados que deban visitar la comunidad en funciones oficiales. 23 L.P.R.A. sec. 64c. (Supl. 1995).

En cuanto al dictamen que emita el municipio, se dispone que el mismo será firme desde la fecha del archivo en el municipio de copia de su notificación, indicando que si la autorización concedida modifica o restringe los controles propuestos, el mismo será uno preliminar. Así, las condiciones, cambios o modificaciones incorporadas deberán ser adoptadas por la Asociación o Junta proponente mediante declaración firmada por no menos de tres cuartas (3/4) partes de los propietarios. El archivo en el municipio de la oportuna presentación de dicha declaración convertirá en firme el dictamen preliminar del cual se podrá recurrir en revisión judicial dentro de los siguientes veinte (20) días. 23 L.P.R.A. sec. 64b.

En el caso que nos ocupa, habiéndose determinado por el Municipio de San Juan, a través de la Oficina de Control de Acceso, que la Asociación de Residentes recurrida cumplió con las exigencias de ley y reglamento para la concesión del control de acceso propuesto según modificado, procede que examinemos ahora si dicha autorización por parte del Municipio está sostenida por evidencia sustancial obrante en el expediente. En particular, habremos de examinar las alegaciones de la recurrente a los efectos de que se expidió la autorización para el control de acceso propuesto sin contar con el endoso de la Compañía de Turismo, del Departamento de Recursos Naturales y Ambientales, de la Autoridad de Carreteras, y del Departamento de Bomberos. Examinaremos, además, las alegaciones de la recurrente a los efectos de que la decisión recurrida conflige con la Ley de Política Pública Ambiental, *supra*, y con el Plan de Usos de Terrenos de la Región Metropolitana de San Juan.

**IV**

Según expuesto anteriormente, la Ley Núm. 21, *supra*, dispone que el endoso de las agencias deberá expresarse *"por escrito...en o antes de la primera vista pública. De favorecerlo, pero con modificaciones y condiciones, expresará claramente en qué consisten y las justificaciones de las mismas. De oponerse...se expresarán las razones para negar su endoso..."* 23 L.P.R.A. sec. 64b (c). Esta referencia se hace necesaria para colocar los señalamientos de los recurrentes en correcta perspectiva.

Dirigiendo nuestra atención inicialmente a la alegada falta de endoso del Departamento de Recursos Naturales y Ambientales (en lo sucesivo DRNA), se desprende del expediente que el único pronunciamiento sustantivo que hizo dicho departamento con relación a la petición de la Asociación, fue a los efectos de que *"a tono con la política pública establecida sobre Control de Accesos y el Reglamento antes citado [Reglamento 17 de la Junta de Planificación]* ▆ *y por las circunstancias particulares que representa el caso de Ocean Park...este Departamento endosa el proyecto de control de acceso...según propuesto, condicionado a que se mantengan los accesos peatonales en las Calles Santa Ana, Tapia y España esq. Soldado Serrano, que permita la libre entrada de los no residentes a través de la urbanización Ocean Park que dan acceso a la playa durante los períodos diurnos, de 7:00 A.M. a 7:00 P.M., todos los días del año".* ▆ Este pronunciamiento lleva fecha de 1ro. de marzo de 1993. Es significativo observar que el DRNA endosó el proyecto original presentado por la Asociación, el que era mucho más restrictivo en cuanto al control de acceso que el que eventualmente fue autorizado por el Municipio. Este último dispone en lo pertinente que se *"garantizará el acceso vehicular todos los días del año de 7:00 A.M. a 6:00 P.M. a través de la calle Santa Ana",* además de facilitar el mismo durante los fines de semana y días feriados a través de las calles Tapia y España.

Es ante esta realidad que los recurrentes argumentan que el endoso del DRNA había expirado a la fecha de la celebración de la primera vista pública la cual, incorrectamente, alegan fue celebrada el 20 de abril de 1994, cuando claramente surge de los autos que la misma se efectuó el martes, 20 de abril de 1993, o sea, exactamente un año antes de la indicada por la recurrente. Ello de por sí torna en totalmente frívolo, infundado e inmeritorio dicho planteamiento. Ahora bien, independientemente de lo antes indicado, aún si tomáramos como cierta la expiración del endoso del DRNA, la falta del mismo pierde su pertinencia ya que con fecha de 15 de septiembre de 1994, en una carta dirigida a la Lic. Lillian Cruz, Directora de la Unidad de Control de Accesos del Municipio de San Juan, el DRNA expresó que era la Junta de Planificación *"la agencia responsable por estos endosos, [por lo cual] el DRNA no emitirá endoso alguno, [ello para añadir que] simplemente nos limitamos a señalar que deberá proveer un acceso adecuado a las playas de Ocean Park para el disfrute de los ciudadanos o turistas".* (véase Apéndice, págs. 162 y 164.) Como hemos visto, dicho acceso quedó garantizado en el proyecto sustitutivo que eventualmente aprobó el Municipio de San Juan, precisamente tomando en consideración las disposiciones de los Reglamentos promulgados por la Junta de Planificación.

Habiéndose concluido, según indicado, que de los autos surge que medió el endoso del DRNA, ello nos conduce a disponer de igual forma en lo que respecta a la alegación de falta de endoso por parte de la Autoridad de Carreteras. Basta un examen de los documentos pertinentes para percatarnos que la preocupación de esta entidad giró en torno a la manera en que podían verse afectados los accesos a la playa. No obstante, al manifestar que *"endosamos los controles de acceso solicitados",* ▆ ésta simplemente lo sujetó a que se le sometiera el endoso del DRNA, endoso que, según indicado, surge del expediente.

Atendiendo ahora la argumentación de la recurrente referente a la injerencia de la Compañía de Turismo sobre el control de acceso propuesto, tampoco le asiste la razón. Se desprende de los autos y, en particular, de la comunicación suscrita por la Compañía de Turismo dirigida al Alcalde de San Juan, que ésta manifestó que le era de sumo interés *"que se mejore la seguridad en todas las áreas turísticas y a esos efectos endosamos la iniciativa de estos residentes para ayudar a combatir la criminalidad".* ▆ A su vez, reconoció que era prerrogativa de los residentes y comerciantes de Ocean Park solicitar, y del Municipio de San Juan, como organismo llamado por ley para así hacerlo, decidir sobre la petición de control de acceso de dicha urbanización. En aras de preservar la actividad turística en el área, entendió que era de vital importancia que se incluyeran ciertas garantías, ▆ las cuales fueron incorporadas íntegramente en el proyecto final endosado por el Municipio de San Juan y oportunamente ratificado por la Asociación de Residentes. ▆ No puede considerarse como una falta de endoso por parte de dicha entidad, como argumenta la recurrente, el llamado que hace Turismo a un análisis concienzudo antes de una determinación final. Dicha Compañía reconoció que los intereses en conflicto eran armonizables a la luz de la propuesta presentada, y que su preocupación real eran *"otras zonas de uso mixto en San Juan (Ej. Condado) que presentan circunstancias aún más difíciles para armonizar intereses como los que aquí nos encontramos."* ▆

En lo que respecta a la alegada falta de endoso del Cuerpo de Bomberos de Puerto Rico, tal alegación es totalmente frívola. Claramente surge de la comunicación cursada por dicha agencia al

Municipio de San Juan, que dicho Cuerpo *"no tiene objeción a endosar los controles de acceso de calles"* ...mientras no se produzca un *"cierre permanente con murallas, drones o portones fijos".* (Énfasis suplido). ■ La Resolución Núm. 26, en su inciso 2(c), autoriza la instalación de barreras vehiculares removibles en caso de emergencia. ■ Innecesario resulta decir que lo que es removible no es fijo, ■ cualidad que no tiene el efecto de transgredir el endoso adjudicado por el Cuerpo de Bomberos a la autorización otorgada por el Municipio a la Asociación de Residentes para controlar el acceso a sus calles, según aprobado por la resolución de referencia. Resulta, pues, por demás, espurio el planteamiento de la recurrente. Atendiendo ahora el señalamiento atinente al incumplimiento por parte del Municipio de San Juan con las disposiciones de la Ley de Política Ambiental, *supra,* la cual ordena a los municipios, entre otras entidades, a preparar una declaración sobre el impacto ambiental de cualquier legislación, acción o decisión que afecte significativamente el medio ambiente, el mismo carece totalmente de méritos. La recurrente Tasca discute el mismo en términos del impacto que tendría el control de acceso propuesto sobre el tránsito en el sector circundante a la comunidad objeto del mismo, según consta en autos, la Asociación preparó un estudio de tránsito en octubre de 1992, ■ el cual fue sometido a la consideración del Municipio en ocasión de la vista pública celebrada. En oposición, argumenta la recurrente que el mismo *"tenía que ser actualizado"* ya que habían *"transcurrido casi dos años"* desde su preparación a la fecha de la celebración de dicha vista. En su esfuerzo, vuelve a señalar incorrectamente que la vista se efectuó un año luego de lo que en realidad fue. Es decir, vuelve a argumentar que la vista pública se celebró el 20 de abril de 1994, surgiendo de los autos que se llevó a cabo el martes, 20 de abril de 1993. Al así hacerlo, sus argumentos caen por su propio peso. Ello nos mueve a acoger con aprobación las conclusiones a las que llegó el Municipio de que *"no surge de la evidencia disponible que el proyecto cual propuesto contemple alguna medida que pudiera tener un efecto significativo sobre la calidad del medio ambiente, por lo cual no se requiere una declaración de impacto ambiental".* ■ Siendo ello así, ningún fundamento meritorio existe para sustituir nuestro criterio por el del organismo autorizado por ley para así hacerlo.

Réstanos estimar la alegación en torno a la falta de evaluación de la compatibilidad de la acción propuesta con el Plan de Usos de Terrenos de la Región Metropolitana de San Juan (en lo sucesivo PDUT-SJ). Dicho plan pretende esencialmente que los cambios físicos y ambientales a dichos terrenos esten en conformidad con las políticas y estrategias de desarrollo de Puerto Rico de acuerdo a lo dispuesto en la Ley Núm. 75 de 24 de junio de 1975, 23 L.P.R.A. sec. 62m.

La justificación de la necesidad de preparar dicha evaluación, según argumentaron los recurrentes, descansa en que el PDUT-SJ considera el área sujeta al control propuesto como un área de redesarrollo, implicando que se pretende transformar la misma de un área predominantemente residencial a una comercial. De la evidencia que surge de los autos, las agencias concernidas catalogan el área de Ocean Park como una de carácter mixto residencial-turístico, y del expediente no se desprende que las mismas consideren que la acción propuesta sea incompatible con la política pública que subyace a los propósitos esbozados en el PDUT-SJ. En todo caso, el control de acceso autorizado para el área en cuestión propende a desarrollar a un óptimo la intensidad residencial-turística de la misma, al proveerse facilidades para impedidos, acceso directo a la playa, promoción para los turistas y seguridad para los residentes y visitantes, todo ello manteniendo el carácter indiscutiblemente residencial de la urbanización.

Nos resulta difícil concebir cómo el control de acceso según autorizado contraviene dicha política pública e inferimos que en igual posición se encontró el Municipio de San Juan. Su actuación de no ordenar una evaluación al respecto merece nuestra mayor deferencia y respeto.

Recapitulando. Nos encontramos frente a una decisión del Municipio de San Juan que debe ser examinada en etapa de revisión judicial a la luz de la totalidad de la evidencia presentada ante la agencia obrante en el expediente administrativo. En el proceso debemos tener presente que los procedimientos y decisiones de un organismo administrativo tienen a su favor una presunción de corrección y regularidad, presunción que debe ser respetada, no siendo suficiente que la recurrente invoque alguna irregularidad o defecto en el trámite seguido, sino que tiene el peso de la prueba de demostrar afirmativamente cómo este error invalida la decisión del organismo concernido. *La Facultad de las Ciencias Sociales Aplicadas, Inc. v. Consejo de Educación Superior, supra,* a la pág. 10783; *M.&.S., Inc. v. Departamento de Agricultura,* 118 D.P.R. 319, 331 (1987); *Henríquez, supra* a la pág. 210. Por otro lado, la decisión de un municipio de autorizar el establecimiento de un sistema de

control de acceso bajo la Ley Núm. 21, *supra*, se trata de un ejercicio de reglamentación del uso de las calles, al amparo de una delegación del poder de razón del estado. Esta es un área donde tradicionalmente se ha reconocido una amplia discreción a los municipios. *López, Fed. Coms. Unidos v. Municipio de San Juan,* 121 D.P.R. 75, 88 (1988); *Pueblo v. Miranda,* 56 D.P.R. 601 (1940); *Pueblo v. Maymón,* 24 D.P.R. 61 (1916); *Pueblo v. Padilla,* 20 D.P.R. 276 (914); *Sucesión Bianchi v. Ayuntamiento,* 6 D.P.R. 145 (1904).

En el caso que nos ocupa, resulta obvio que la determinación del Municipio de San Juan autorizando el control de acceso solicitado por la Asociación de Residentes está avalada por evidencia sustancial obrante en el expediente administrativo. Además, la decisión que es objeto de impugnación es razonable y compatible con los propósitos legislativos esbozados en la ley de referencia. Por su parte, los recurrentes no han descargado su obligación de demostrar irregularidad alguna, ni proceder ilegal, arbitrario o caprichoso que justifique nuestra intervención para dejar sin efecto la decisión recurrida. Siendo ello así y estando apoyado el dictamen recurrido por evidencia sustancial obrante en el expediente, resulta procedente denegar la expedición de auto de *certiorari* solicitado.

## V

Por los fundamentos antes consignados se deniega la expedición del auto de *certiorari* solicitado.

Lo acuerda el tribunal y así lo certifica la Señora Secretaria General.

María de la C. González Cruz
Secretaria General

### ESCOLIOS 96 DTA 75

**1.** En lo pertinente, dicha sección dispone que *"[L]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el Tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo".*

**2.** Véase Minuta, Apéndice de la Petición, pág. 73.

**3.** Véase Apéndice de la Petición, pág. 150, además de las págs. 171 y 408.

**4.** Véase Apéndice de la Petición, págs. 38-47 y 48-55.

**5.** Véase Res. Núm. 26, Serie 1994-95, Apéndice de la Petición, págs. 31-37.

**6.** 23 L.P.R.A. sec. 64b (d).

**7.** *Id.*

**8.** Véase Certificación, Apéndice de la Petición, pág. 2.

**9.** Véase Apéndice de la Petición, pág. 13.

**10.** Véase Sentencia, Apéndice de la Petición, pág. 3.

**11.** El Reglamento de Planificación Núm. 17 tiene como objetivo principal que todas las personas residentes y visitantes de Puerto Rico tengan igualdad de oportunidades de llegar por vía terrestre a las costas (especialmente playas) y disfrutar de ellas. A pesar de que la Sección 3.04 de dicho reglamento establece el objetivo de asegurar que los accesos existentes permanezcan abiertos, la misma contempla, además, que siempre y cuando se obtengan los permisos correspondientes, se pueden construir vallas y verjas en los accesos públicos. De esta manera observamos que aun el endoso de la Junta de Planificación resulta innecesario una vez el municipio determine que el control de acceso propuesto cumple con lo estipulado en el reglamento. Entendemos que se da virtualidad así al propósito legislativo de delegar exclusivamente tal facultad en los municipios con la asesoría

de la Junta a través de su función transformada por ley, consistente en la promulgación de reglamentos dirigidos a sostener la política pública al respecto.

**12.** Véase Apéndice de la Petición, págs. 159-160.

**13.** Véase Apéndice de la Petición, pág. 169.

**14.** Véase Apéndice de la Petición, págs. 174-175.

**15.** Las mismas estaban dirigidas básicamente a garantizar el acceso y la promoción de las hospederías enclavadas en el área sujeta al control de acceso, el paso hacia la playa y a que no se constituyera ninguna barrera física o arquitectónica a ciudadanos con impedimentos.

**16.** Véase Apéndice de la Petición, págs. 33 y 175.

**17.** *Id.*, a la pág. 175.

**18.** Véase Apéndice de la petición, pág. 165.

**19.** Véase Resolución Núm. 26, Serie 1994-95, Apéndice de la Petición, pág. 32.

**20.** *"Según el Diccionario de la Real Academia Española, fijo es aquello que está permanentemente establecido y no expuesto a movimiento o alteración. En contradistinción, es removible lo que se puede remover, o sea, que puede pasar o mudarse una cosa de un lugar a otro".* Diccionario de la Lengua Española, 682, 1254, Real Academia Española (21ra. ed. 1992).

**21.** Véase Estudio de Tránsito, Apéndice de la Petición, págs. 170-184.

**22.** Véase Informe y Recomendación, Apéndice de la Petición, pág. 66. Observamos que los recurrentes, quienes pudieron haber presentado un estudio para refutar los hallazgos recogidos por aquel sometido por la Asociación de Residentes, no lo hizo. Al así actuar, no puso en condición al Municipio de llegar a una conclusión diferente.