EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Luis A. Cruz Rivera | Certiorari |
|---|---|
| Peticionario | |
| v. | 2020 TSPR 125 |
| Municipio de Guaynabo | 205 DPR _____ |
| Recurrido | |

Número del Caso:  CC-2019-504

Fecha:  14 de octubre de 2020

Tribunal de Apelaciones:

    Panel VII

Abogado de la parte peticionaria:

    Lcdo. Johnny Correa Noa

Abogado de la parte recurrida:

    Lcdo. Manuel J. Camacho Córdova

Materia:  Sentencia con Opinión Disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Luis A. Cruz Rivera<br><br>Peticionario<br><br>v.<br><br>Municipio de Guaynabo<br><br>Recurrido | CC-2019-0504 | Certiorari |

SENTENCIA

San Juan, Puerto Rico, a 14 de octubre de 2020.

Tenemos la encomienda de resolver si el Tribunal de Apelaciones incidió al revocar una Resolución emitida por la Comisión Apelativa del Servicio Público (CASP). En síntesis, el organismo administrativo dictaminó que la medida disciplinaria de destitución, adoptada por el Municipio de Guaynabo contra el Sr. Luis A. Cruz Rivera, fue muy drástica y desproporcional. Así, procedió a modificarla a una suspensión de empleo y sueldo por sesenta (60) días.

Al amparo de los fundamentos que expondremos, resolvemos que el ente administrativo en cuestión basó su determinación en evidencia sustancial y de conformidad a las normas de disciplina progresiva contenidas en la reglamentación del Municipio de Guaynabo. En consecuencia, revocamos el dictamen emitido por el Tribunal de Apelaciones y reinstalamos la medida disciplinaria dictaminada por la CASP en todo su alcance.

Revisemos los antecedentes fácticos y procesales que suscitaron la controversia de epígrafe.

I.

El Sr. Luis A. Cruz Rivera (señor Cruz Rivera o peticionario) laboró por veintiséis (26) años como operador de equipo pesado en el servicio de carrera del Municipio de Guaynabo. Durante esa extensa jornada de servicio público, el peticionario nunca había sido objeto de una medida disciplinaria. La primera ocasión generó la controversia que nos ocupa y sus hechos se remontan al 18 de marzo 2008.

En tal ocasión, el peticionario se encontraba en su jornada de trabajo y al mediodía utilizó su vehículo personal para acudir a un solar privado en la colindancia entre Guaynabo y San Juan. En ese solar privado, se encontraba estacionado un vehículo pesado ("digger") perteneciente al Municipio de Guaynabo, el cual fue utilizado por el señor Cruz Rivera para limpiar maleza y escombros. El Administrador de Equipo Pesado del Municipio de Guaynabo, el Sr. David Figueroa Almodóvar, acudió al referido solar y cuestionó al peticionario en torno al uso del vehículo pesado municipal.

Ante ese cuadro, el Municipio de Guaynabo formuló cargos disciplinarios al señor Cruz Rivera y le notificó su intención de destituirlo. Culminado el trámite administrativo, el peticionario fue destituido de su puesto regular por infracciones a las siguientes normas reglamentarias: (1) abandono de área de trabajo sin previa

autorización; (2) uso no autorizado de equipo municipal; (3) conducta impropia que afecta el buen nombre del Municipio de Guaynabo, y (4) uso de un vehículo oficial sin previa autorización.

Inconforme, el señor Cruz Rivera acudió a la extinta Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH) para impugnar su destitución. Celebrada la correspondiente vista administrativa, el Oficial Examinador que dirigió los procesos emitió un informe mediante el cual recomendó modificar la sanción disciplinaria por concluir que la prueba desfilada no sostuvo la drástica sanción de la destitución.

De las cuatro normas de conducta imputadas, el Oficial Examinador determinó que no se probó que el señor Cruz Rivera incurrió en conducta impropia que afectara el buen nombre del Municipio de Guaynabo. En torno a las demás imputaciones, concluyó que sí fueron cometidas por el peticionario. Sin embargo, al ser su primera falta en veintiséis (26) años de servicio y a tenor con la disciplina progresiva contenida en la reglamentación municipal, el Oficial Examinador recomendó modificar la medida disciplinaria a una suspensión de empleo y sueldo por sesenta (60) días. Además, sugirió dejar sin efecto la destitución impuesta y el pago de los salarios y haberes dejados de percibir.

Eventualmente, la CASP -sucesora de la CASARH- dictó una Resolución en la cual acogió todas las recomendaciones contenidas en el informe suscrito por el Oficial Examinador. En consecuencia, dejó sin efecto la destitución del señor Cruz Rivera. Ante ello, el Municipio de Guaynabo solicitó reconsideración, la cual fue denegada.

En desacuerdo, el Municipio de Guaynabo acudió ante el Tribunal de Apelaciones. Ponderados los argumentos de las partes, el foro apelativo emitió una Sentencia mediante la cual revocó la Resolución recurrida. En lo pertinente, razonó que la naturaleza de la conducta del señor Cruz Rivera justificó la destitución de su puesto. Asimismo, concluyó que "utilizar la antigüedad como criterio medular en la evaluación del derecho aplicable, sin identificar algún estatuto o norma que así lo requiera, apunta a un análisis arbitrario".[1] En consecuencia, resolvió que los años de servicio del peticionario no eran relevantes para la imposición de la sanción disciplinaria. Por tanto, revocó la Resolución de la CASP y reinstaló la destitución impuesta al peticionario. Insatisfecho, el señor Cruz Rivera presentó una moción de reconsideración, la cual fue declarada no ha lugar.

Inconforme con ese proceder, el señor Cruz Rivera comparece ante este Tribunal mediante recurso de certiorari. Esencialmente, señala que el Tribunal de Apelaciones incidió al revocar el dictamen de la CASP, por tratarse de una

---

[1] Apéndice de certiorari, Sentencia del Tribunal de Apelaciones, pág. 80.

adjudicación desligada de la prueba documental y testifical vertida en la vista administrativa. De igual modo, arguye que el foro apelativo no estaba en posición para adjudicar la controversia ante sí, pues el Municipio de Guaynabo no presentó los reglamentos aplicables sobre medidas disciplinarias a sus empleados y empleadas. En virtud de que el señor Cruz Rivera fue despedido precisamente a base de imputaciones y alegadas violaciones a dichos reglamentos, arguye que eran indispensables para la adjudicación apropiada de este recurso. En consecuencia, alega que el recurso debió desestimarse.

Expedido el recurso de certiorari y con el beneficio de la comparecencia de ambas partes, procedemos a resolver la controversia conforme a derecho.

## II.

De entrada, resulta adecuado atender el segundo señalamiento de error planteado por el señor Cruz Rivera. Tal como lo dispone el peticionario, el Municipio de Guaynabo presentó un apéndice incompleto, carente de los reglamentos aplicables a la controversia ante nos. No obstante, tal omisión no conlleva la desestimación automática del recurso. Veamos.

Como es sabido, la reglamentación es fuente de derecho. Por tanto, de ordinario, no existe obligatoriedad en incluir su contenido en el apéndice de un recurso apelativo, sino que basta citarla adecuadamente. Sin embargo, existe cierta reglamentación, como la que nos ocupa en el caso ante nos,

que no está disponible en los diversos sistemas de investigación jurídica. Ello ciertamente complica la investigación del foro judicial. En consecuencia, la mejor práctica es que este tipo de fuente de derecho sea suplida por la parte peticionaria, tal como lo contempla la Regla 59(E)(1) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B.

Sin embargo, distinto a lo que propone el señor Cruz Rivera, la omisión de tal reglamentación no debe ser causa para desestimar automáticamente un recurso apelativo. Precisamente, la Regla 59 (E)(2) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, provee expresamente que "[l]a omisión de incluir los documentos del Apéndice **no** será causa de desestimación del recurso". (Énfasis suplido). Ello, en conformidad al Art. 4.004 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, 4 LPRA sec. 24w, el cual dispone que la reglamentación interna del Tribunal de Apelaciones procurará reducir al mínimo el número de recursos desestimados por defectos de forma.

A la luz de lo anterior, consideramos que el señalamiento de error levantado no amerita declarar sin jurisdicción al Tribunal de Apelaciones. Ciertamente, la controversia ante nos requiere interpretar el alcance y la consecuencia jurídica de la reglamentación aplicable. No obstante, basta con que este Tribunal obtenga copia de la reglamentación, confirme a través de su investigación

jurídica el contenido de las normas en controversia y proceda a resolver conforme a derecho.

De igual manera, en estas circunstancias, nada impide que los foros judiciales ordenen a la parte peticionaria a suplir determinada fuente de derecho especializada que obre en su poder y que, por su naturaleza interna, no sea publicada en los distintos sistemas de investigación jurídica. De hecho, eso fue precisamente lo que hizo la CASP en el caso de epígrafe; previo a adjudicar el reclamo ante su consideración, le requirió al Municipio de Guaynabo que presentara tal reglamentación.

Una vez aclarado ese asunto de umbral, procedemos a atender el aspecto sustantivo de la controversia que nos ocupa, levantado correctamente en el primer señalamiento de error.

**III.**

**A.**

En materia administrativa, nuestra función revisora tiene como norte delinear la discreción de las entidades administrativas para garantizar que sus decisiones se encuentren en el marco de los poderes delegados y que sean consecuentes con la política pública que las origina. Torres Rivera v. Policía de PR, 196 DPR 606, 625-626 (2016); Mun. de San Juan v. J.C.A., 149 DPR 263, 279 (1999). En esa encomienda, debemos conceder deferencia a las decisiones que tomen las agencias administrativas. Comisionado Seguros P.R. v. Integrand, 173 DPR 900, 914

(2008). Ello, debido a la especialidad y experiencia que tiene cada agencia en torno a las áreas específicas que regula. Mun. de San Juan v. CRIM, 178 DPR 163, 175 (2010).

A la luz de lo anterior, los foros judiciales intervendrán en las determinaciones administrativas cuando las agencias actúen arbitraria, ilegal o irrazonablemente. JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177, 187 (2009). En ese ejercicio, el criterio rector será la razonabilidad de la actuación de la agencia. Otero v. Toyota, 163 DPR 716, 727 (2005). Por un lado, las determinaciones de hecho se sostendrán por los tribunales si las mismas se basan en evidencia sustancial que surja de la totalidad del expediente administrativo. Rolón Martínez v. Supte. Policía, 201 DPR 26, 36 (2018). Por su parte, las determinaciones de derecho se pueden revisar en su totalidad. Torres Rivera v. Policía de PR, supra, pág. 627.

**B.**

A grandes rasgos, este Tribunal ha expresado que es principio jurídico en el servicio público que las medidas disciplinarias impuestas a los empleados y las empleadas deben guardar **proporción** con la falta cometida. Torres Solano v. P.R.T.C., 127 DPR 499, 515 (1990); Srio. del Trabajo v. I.T.T., 108 DPR 536, 547 (1979). A raíz de ello, hemos resuelto que la destitución de un empleado o una empleada del servicio público es un castigo extremo, que sólo procederá ante conducta y actuaciones de eminente

gravedad. Rodrigo v. Tribunal Superior, 101 DPR 151, 168 (1973). Por tanto, como norma general, las primeras ofensas no ameritarán la destitución. Al contrario, la destitución procederá en las siguientes circunstancias excepcionales:

> La falta o acto aislado que dé lugar a despido del empleado en primera ofensa ha de ser de tal seriedad o naturaleza que revele una actitud o un detalle de su carácter, tan lesivo a la paz y al buen orden de la empresa, que constituiría imprudencia esperar su reiteración para separarlo del establecimiento. Srio. del Trabajo v. I.T.T., supra, pág. 544.

Ahora bien, la Ley de Municipios Autónomos de Puerto Rico, Ley Núm. 81-1991, 21 LPRA sec. 4001 et seq., autoriza a los municipios a establecer las medidas disciplinarias necesarias para salvaguardar el buen orden y la sana administración pública. En atención a dicha facultad, el Artículo 11.012 del estatuto dispone lo siguiente:

> Cuando la conducta de un empleado no se ajuste a las normas establecidas, la autoridad nominadora municipal impondrá la acción disciplinaria que corresponda. Entre otras medidas se podrán considerar las amonestaciones, las reprimendas escritas, las suspensiones de empleo y sueldo, y las destituciones. Ley de Municipios Autónomos de Puerto Rico, supra, 21 LPRA sec. 4562,

En virtud de la facultad delegada mediante la precitada ley, el Municipio de Guaynabo adoptó el Reglamento de Personal Servicio de Carrera, aprobado el 10 de julio de 2003.[2] En el mismo, se autoriza la ejecución de medidas disciplinarias a los empleados y las empleadas del Municipio

---

[2]El Reglamento de Personal Servicio de Carrera del Municipio de Guaynabo, aprobado el 10 de julio de 2003, ha sido enmendado posteriormente. Sin embargo, a los hechos ante nuestra consideración le aplica el reglamento reseñado.

de Guaynabo cuya conducta no se ajuste a las normas de conducta establecidas. Íd., Secc. 4.4.3. Para ello, el Reglamento de Personal Servicio de Carrera especifica que toda aplicación de medidas disciplinarias debe realizarse conforme a un manual titulado Procedimiento para el Trámite de una Medida Disciplinaria, aprobado el 10 de febrero de 1994. Íd., Secc. 4.4.4.

A esos efectos, el Procedimiento para el Trámite de una Medida Disciplinaria dispone que las medidas correctivas podrán ser ejecutadas tanto por el personal de supervisión o por el Alcalde. Íd., Secc. 5.1. Por un lado, el personal de supervisión tendrá la facultad de imponer amonestaciones verbales y escritas. Por su parte, el Alcalde tendrá la discreción de implementar las medidas disciplinarias más graves, entiéndase, las reprimendas escritas, las suspensiones de empleo y sueldo, y las destituciones.

Con el propósito de delinear la discreción de los funcionarios y las funcionarias al implementar las medidas disciplinarias, el Procedimiento para el Trámite de una Medida Disciplinaria especifica las sanciones que deben proceder ante las distintas infracciones y violaciones a las normas de conducta que puede incurrir un empleado o una empleada. A esos efectos, el manual especifica que "[c]omo norma general, estas medidas se aplicarán en el **orden sucesivo** que aparece en el Anejo, según el empleado incurra o reincida en las fracciones". Íd., Secc. 5.2. Es decir, de ordinario, los funcionarios o las funcionarias con

autorización para implantar medidas disciplinarias tendrán que seguir un sistema de disciplina progresiva, aplicando primeramente las sanciones menos severas.

Sin embargo, en casos excepcionales, se podrá obviar este orden sucesivo y acudir a medidas correctivas más severas. Ello, cuando la gravedad de la ofensa cometida lo amerite. Así lo dispone el <u>Procedimiento para el Trámite de una Medida Disciplinaria</u>, al proveer lo siguiente:

> No obstante, el supervisor, jefe de división u oficina o el Alcalde, podrán en el ejercicio de su discreción imponer las medidas más severas si determinan que la falta cometida por el empleado es de tal naturaleza o gravedad que así lo amerita. Íd., Secc. 5.2.

En lo que atañe a la controversia ante nos, el manual en cuestión provee que las siguientes ofensas ameritarán las siguientes sanciones en orden sucesivo:

> <u>Infracción número 8</u>
> Abandonar el área de trabajo para atender asuntos no oficiales sin la previa autorización del supervisor.
>
> Sanciones: Amonestación verbal, amonestación escrita, reprimenda escrita y, suspensión de empleo y sueldo.
>
> <u>Infracción número 25</u>
> Hacer uso no autorizado de equipo o propiedad o documentos u otros bienes de la oficina, o permitir que este se pierda, se destruya o reciba daños como resultado de negligencia directa o indirecta.
>
> Sanciones: Amonestación escrita, reprimenda escrita, suspensión de empleo y sueldo, y destitución.
>
> <u>Infracción número 35</u>
> Conducta impropia dentro o fuera del trabajo de tal naturaleza que afecte el buen nombre, refleje descrédito o ponga en dificultad a la

oficina o cualquier agencia o dependencia del gobierno.

Sanciones: Suspensión de empleo y sueldo, y destitución.

Infracción número 44
Infracciones aplicables a empleados que conducen vehículos oficiales:
a. Incurrir en infracciones a la Ley de Tránsito.
b. Transportar personas en los vehículos oficiales, sin la debida autorización.
c. Utilizar los vehículos oficiales de la oficina sin autorización previa para usos no oficiales en o fuera de horas laborables.

Sanciones: Amonestación verbal, amonestación escrita, reprimenda escrita, suspensión de empleo y sueldo, y destitución. Íd., Anejo Medidas correctivas aplicables a las infracciones a las normas de conducta para los empleados del Municipio de Guaynabo.

Como adelantamos, de ordinario, las medidas se aplicarán en el orden sucesivo que aparecen, según el empleado o la empleada incurra o reincida en las infracciones. Solamente cuando la falta cometida sea de tal naturaleza o gravedad que amerite destitución podrá, por vía excepcional, obviarse la disciplina progresiva.

De igual modo, el Procedimiento para el Trámite de una Medida Disciplinaria provee unas guías para determinar cuál es la sanción más apropiada ante una infracción a las normas de conducta del Municipio de Guaynabo. A esos fines, el manual dispone que, al aplicar una medida correctiva, se deben tomar en consideración los siguientes factores: "**años de servicio**, productividad, su expediente u hoja de servicios, las **reincidencias**, la naturaleza de la falta que comete, combinación de infracciones en que incurra el empleado y la posición jerárquica dentro de la organización

con relación a la infracción cometida". (Énfasis suplido). Íd., Secc. 5.2. Asimismo, especifica que "[l]a medida correctiva que se aplique debe estar sostenid[a] por la prueba y guardar **proporción** con la infracción". (Énfasis suplido). Íd.

Examinado el derecho aplicable, solo nos resta resolver la controversia de autos.

**IV.**

Como expusimos anteriormente, la CASP sostuvo que las infracciones cometidas por el señor Cruz Rivera no ameritaban su destitución. Ello, en vista de las sanciones progresivas dispuestas en el Procedimiento para el Trámite de una Medida Disciplinaria, los veintiséis (26) años de servicio público del señor Cruz Rivera y ante el hecho de que ésta fue su primera falta. A la luz de lo anterior, optó por sancionar al señor Cruz Rivera mediante una suspensión de empleo y sueldo por sesenta (60) días.

Ante ese cuadro, el Tribunal de Apelaciones revocó la determinación de la CASP. A esos efectos, el foro apelativo resolvió que la conducta del señor Cruz Rivera era lo suficientemente grave para justificar su despido. Así, concluyó que la CASP actuó arbitrariamente al tomar en consideración los años de servicio del señor Cruz Rivera. Según el Tribunal de Apelaciones, no existía fundamento jurídico alguno que justificara tal análisis.

Tras un estudio detenido del expediente y del derecho aplicable, resolvemos que le asiste el derecho al señor

Cruz Rivera. Según el <u>Procedimiento para el Trámite de una Medida Disciplinaria</u>, para la infracción número 8 procede una medida correctiva inicial de amonestación verbal; para la infracción número 25 procede una medida correctiva inicial de amonestación escrita; para la infracción número 35 procede una medida correctiva inicial de suspensión de empleo y sueldo (esta infracción no fue probada ante CASP), y, finalmente, para la infracción número 44 procede una medida correctiva inicial de amonestación verbal.

A pesar de lo anterior, el Municipio de Guaynabo le impuso al señor Cruz Rivera la drástica y severa sanción de destitución. Ello, sin probar la existencia de circunstancias excepcionales que conducirían a una destitución como primera opción.

En consecuencia, la CASP concluyó correctamente que, como cuestión de derecho, erró el Municipio de Guaynabo al imponer la medida disciplinaria más drástica de destitución, a pesar de ser la primera ofensa del empleado, de sus años de servicio y de la falta de circunstancias excepcionales que ameritaran tal curso de acción. Contrario a lo que concluyó el Tribunal de Apelaciones, la reglamentación aplicable dispone clara y expresamente que los años de servicio y la reincidencia son factores a considerar ante la implantación de una medida correctiva. De hecho, el <u>Procedimiento para el Trámite de una Medida Disciplinaria</u> exige la proporcionalidad entre toda medida disciplinaria y la infracción cometida. Por tanto, la CASP

actuó razonablemente y dentro de los límites establecidos en la reglamentación aprobada precisamente por el Municipio de Guaynabo.

Ciertamente, el señor Cruz Rivera exhibió una conducta que ameritaba una sanción disciplinaria. Es por ello que la CASP le impuso la sanción de sesenta (60) días de suspensión de empleo y sueldo. Sin embargo, ello no es suficiente para que el Tribunal de Apelaciones sustituyera el criterio del ente administrativo. Al así hacerlo, el foro apelativo obvió los fundamentos de derecho contenidos en la reglamentación municipal y nuestros pronunciamientos en materia de destitución de empleados. En fin, bajo las circunstancias particulares de este caso, no debió obviarse la norma general contemplada en la reglamentación municipal y el dictamen razonable emitido por la CASP.

## V.

A la luz de los fundamentos expuestos, revocamos el dictamen emitido por el Tribunal de Apelaciones y reinstalamos la Resolución emitida por la CASP.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez disiente con opinión escrita, a la cual se unieron el Juez Asociado señor Martínez Torres y la Jueza Asociada señora Pabón Charneco.

José I. Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis A. Cruz Rivera
        Peticionario
            v.
Municipio de Guaynabo              CC-2019-0504      *Certiorari*
        Recurrido

Opinión disidente que emitió la Jueza Presidenta Oronoz Rodríguez a la que se unieron el Juez Asociado señor Martínez Torres y la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 14 de octubre de 2020.

Disiento del criterio mayoritario, pues se debió sostener que la Comisión Apelativa del Servicio Público actuó irrazonablemente y contrario a derecho al resolver que la sanción disciplinaria que impuso el Municipio de Guaynabo no se justificaba. Aquí, un empleado municipal con veintiséis (26) años de experiencia en el servicio público, abandonó su área de trabajo y se llevó una excavadora -que era propiedad pública- para limpiar un solar privado de un conocido que ubica fuera de la demarcación territorial del Municipio de Guaynabo.

Veintiséis (26) años debieron ser suficientes para saber que esa actuación es contraria a derecho y está en contravención con lo que el Pueblo espera de

sus funcionarios públicos. Ante la gravedad de la conducta del empleado, la determinación del Alcalde de destituirlo no fue irrazonable, ilegal, arbitraria o caprichosa. Por el contrario, al utilizar propiedad y fondos públicos para fines privados el empleado incurrió en una conducta grave y violó simultáneamente varias normas de conducta. Ante ello, la determinación de destituirlo estaba dentro de la discreción del patrono. Al resolver lo contrario y revocar la destitución, la Comisión Apelativa del Servicio Público ignoró la naturaleza y gravedad de la conducta del Sr. Luis A. Cruz Rivera, así como otros factores que la reglamentación pertinente exigía considerar para determinar la sanción adecuada. Por consiguiente, la decisión administrativa no se podía sostener. Como la Mayoría la avala, disiento.

I

La Ley de Municipios Autónomos de Puerto Rico[3] les confiere a los municipios la autoridad para adoptar las medidas disciplinarias necesarias para salvaguardar la sana administración pública. Cónsono con esa autoridad, el Municipio Autónomo de Guaynabo adoptó el *Procedimiento para el Trámite de una Medida Disciplinaria* (*Procedimiento*). En lo pertinente, el *Procedimiento* dispone las normas de conducta aplicables a los empleados del municipio, así como aquellas actuaciones que infringen esas normas de conducta. El *Procedimiento* también contiene una lista **no taxativa** de los factores que se deben considerar al determinar cuál es la medida disciplinaria aplicable a cada caso, a saber: (1) años de servicio; (2) productividad; (3) el expediente u

---

[3] Ley Núm. 81-1991, 21 LPRA sec. 4001 et seq.

hoja de servicios del empleado; (4) las reincidencias; (5) **la naturaleza de la falta que comete**; (6) **combinación de infracciones en que incurra el empleado**, y (7) la posición jerárquica del empleado dentro de la organización con relación a la infracción cometida. Sección 5.2, *Procedimiento,* supra. Además, contiene un anejo denominado *Medidas correctivas aplicables a las infracciones a las normas de conducta para los empleados del Municipio de Guaynabo*, que establece las medidas que, de ordinario, aplican a cada infracción. El anejo establece un esquema de medidas que va desde la menos severa (la amonestación verbal) hasta la más severa (la destitución).

Por otro lado, la Sección 5.2 del *Procedimiento* establece que, **como norma general**, las medidas disciplinarias se deben aplicar en el orden sucesivo que aparece en el anejo. Sin embargo, se aclara que esto no tiene que ser así cuando el supervisor, jefe de división u oficina o el Alcalde, **en el ejercicio de su discreción**, decida "imponer las medidas más severas si determinan que la falta cometida por el empleado **es de tal naturaleza o gravedad que así lo ameriten**". Íd. (Énfasis suplido).

De lo anterior surge con claridad que el *Procedimiento* reconoce la posibilidad de obviar el esquema de disciplina progresiva cuando la naturaleza o severidad de la infracción lo amerita. Además, establece claramente que la determinación de si la infracción amerita una sanción más

severa **recae en la discreción del funcionario autorizado para imponer esa sanción.**

De manera compatible con lo que dispone el *Procedimiento*, en el contexto de la Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185a et seq. (Ley Núm. 80), hemos dicho que una sola ofensa o primera falta es justa causa para el despido de un empleado "**si por su gravedad y su potencial de agravio** pone en riesgo el orden, la seguridad o la eficiencia que constituyen el funcionamiento normal del establecimiento". Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 DPR 643, 649 (1994). (Énfasis suplido). También hemos expresado que, en el supuesto de una falta única del empleado, la Ley Núm. 80, supra, permite que "el patrono le imponga como sanción el despido, siempre y cuando las circunstancias del caso **no reflejen una decisión arbitraria o caprichosa**". Íd., pág. 650. (Énfasis suplido). Así, para que proceda la destitución, la primera ofensa del empleado debe ser "de tal seriedad o naturaleza que **revele una actitud o un detalle de su carácter, tan lesivo a la paz y al buen orden de la empresa, que constituiría imprudencia esperar su reiteración** para separarlo del establecimiento". Srio. del Trabajo v. ITT, 108 DPR 536, 544 (1979). (Énfasis suplido).

Finalmente, sobre el estándar de revisión de las decisiones administrativas, este Foro ha establecido que, si bien esas decisiones merecen deferencia, "los tribunales no podemos imprimirle[s] un sello de corrección, so pretexto de

deferencia, […] [cuando estas son] irrazonables, ilegales o, simplemente, contrarias a derecho". Graciani Rodríguez v. Garaje Isla Verde, 202 DPR 117, 126-127 (2019). Por otro lado, ha sido norma reiterada que este Tribunal no se debe convertir en un súper departamento de recursos humanos, pues al examinar las determinaciones laborales, no podemos sustituir el criterio patronal **si la decisión laboral está dentro de las facultades discrecionales y poderes del patrono, si no es ilegal o contraria a derecho, y si no es irrazonable, caprichosa o arbitraria**. SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 447-448 (2013).

II

En este caso, el Sr. Luis A. Cruz Rivera (señor Cruz Rivera) a mediodía de un día laborable, abandonó su área de trabajo para dirigirse a un solar privado ubicado fuera de la demarcación territorial del Municipio de Guaynabo. Allí, mediante el uso de un "digger" o excavadora propiedad del municipio, y sin contar con autorización para ello, realizó unos trabajos de limpieza en el solar privado. Ante esos hechos, y en consideración a la gravedad y naturaleza de la conducta del empleado, el Alcalde del Municipio de Guaynabo **ejerció su discreción** y determinó que la sanción proporcional a la conducta del señor Cruz Rivera era la destitución. Al tomar su determinación, el Alcalde resaltó que la conducta del señor Cruz Rivera **constituyó un desvío de fondos públicos.** No obstante, la Comisión Apelativa del Servicio Público (CASP) revocó esa determinación tras

concluir que, como era la primera falta del empleado y este contaba con veintiséis (26) años de servicio, la medida más proporcional era una suspensión de empleo y sueldo. La Mayoría avala ese razonamiento. No puedo estar de acuerdo.

En conformidad con la reglamentación aplicable, la CASP debía hacer un análisis integrado y ponderado de los factores que el *Procedimiento* señala para determinar la sanción adecuada y proporcional a la conducta del empleado. Además, debía considerar la gravedad de la conducta incurrida, pues la normativa pertinente establece que, ante una conducta grave, el Alcalde puede discrecionalmente imponer una sanción más severa.

Así, como parte del análisis correspondiente, se debía considerar la naturaleza y gravedad de la conducta del señor Cruz Rivera. En torno a esto, no se podía descartar, como lo hizo la CASP, que **la conducta del empleado atentó contra la sana administración pública, ya que implicó el uso no autorizado de fondos públicos para fines privados.** Ciertamente, al utilizar propiedad municipal para limpiar un solar de un conocido, sin contar con autorización para ello, el señor Cruz Rivera incurrió en el desvío de fondos públicos. Esto, de por sí, convierte la actuación del empleado en una grave que activaba la discreción del Alcalde para imponerle una sanción más severa, como la destitución. No se puede ignorar que **hay ciertos tipos de conducta**, como la del señor Cruz Rivera, que por su naturaleza **adquieren mayor gravedad cuando se dan en el contexto del servicio**

**público** pues está en juego la confianza y los fondos del Pueblo. Conductas como la del señor Cruz Rivera vulneran la confianza del Pueblo en los servidores públicos y afectan al erario. También revelan una actitud del empleado que es sumamente lesiva a la sana administración pública.[4]

A esos fines, cabe destacar que la honradez es uno de los valores morales más importante que deben poseer las personas que aceptan brindar un servicio al Pueblo. Ante ello, **sería una imprudencia esperar a que se repitiera una conducta similar a la que se cometió en este caso para proceder a destituir al empleado**, ya que ello conllevaría permitir un nuevo despilfarro de fondos públicos. La CASP ignoró todo lo anterior al concluir, sin exponer las razones para ello, que la conducta del señor Cruz Rivera no era de tal gravedad como para ameritar la destitución.

La CASP omitió considerar además que, mediante sus actuaciones, el señor Cruz Rivera no incurrió en una sola infracción, sino en **múltiples infracciones a las normas de conducta** de los empleados municipales. Según expuse, **la combinación de las infracciones en las que incurre el empleado es uno de los factores que se deben considerar** al decidir cuál es la sanción proporcional a la infracción cometida. El hecho de que el señor Cruz Rivera cometiera varias infracciones abona a la severidad de su conducta y a

---

[4] Tan es así, que hasta la Ley de Ética Gubernamental de Puerto Rico en su Artículo 4.2(b) sanciona la conducta del empleado al establecer que "[u]n servidor público no puede utilizar […] la propiedad o los fondos públicos para obtener, directa o indirectamente, para él o para una persona privada o negocio, cualquier beneficio que no esté permitido por ley." 3 LPRA sec. 1857a(b).

la proporcionalidad de la destitución como medida disciplinaria. Cabe destacar que, independientemente que el señor Cruz Rivera no hubiera sido disciplinado en veintiséis (26) años de servicios, lo cierto es que cometió múltiples infracciones con su conducta.[5]

A pesar de ello, tanto la CASP como la Mayoría les confirieron el mayor peso a los años de servicio del señor Cruz Rivera. Aunque se podría pensar que ese hecho inclina la balanza a favor del empleado o que atenúa la gravedad de su conducta, su efecto es el contrario. Esto pues precisamente por sus años de servicio, el señor Cruz Rivera conocía o debía conocer a cabalidad las responsabilidades de su puesto, la importancia que revestía para el interés público el cumplimiento de las normas de conducta que debía observar y las consecuencias que podría conllevar infringir esas normas. En ese sentido, las infracciones que el señor Cruz Rivera cometió no fueron consecuencia del error de juicio de un principiante, sino la conducta consciente e intencional de alguien con experiencia en el servicio público. Esto también apoya la determinación inicial del Municipio de Guaynabo de destituir al señor Cruz Rivera.

---

[5] Las infracciones fueron las siguientes: (1) abandonar el área de trabajo para atender asuntos no oficiales sin la previa autorización del supervisor; (2) hacer uso no autorizado de propiedad o equipo o documentos u otros bienes de la oficina, o permitir que este se pierda, se destruya o reciba daños como resultado de negligencia directa o indirecta; (3) conducta impropia dentro o fuera del trabajo de tal naturaleza que afecte el buen nombre refleje descrédito o ponga en dificultad a la oficina o a cualquier agencia o dependencia del gobierno; y (4) utilizar los vehículos oficiales de la oficina sin autorización previa para usos no oficiales en o fuera de horas laborables.

En consecuencia, la CASP erró cuando modificó la sanción que originalmente se le impuso al señor Cruz Rivera, pues no **consideró todos los factores** que el *Procedimiento* identifica como relevantes para determinar cuál sanción es la que guarda proporción con la infracción. Al contrario, en una actuación irrazonable y contraria al derecho aplicable, **enfocó su análisis en solo dos de ellos:** los años de servicio del señor Cruz Rivera y que esta era "su primera falta". Eso no es acorde con lo que establece el *Procedimiento*. Por consiguiente, no es correcto concluir, como hace la Mayoría, que la determinación administrativa fue razonable. Si la CASP hubiese realizado el análisis adecuado, hubiese llegado a la conclusión correcta de que la naturaleza y gravedad de las actuaciones del señor Cruz Rivera en este caso -en unión a otros factores- justificaban la decisión del Alcalde de destituirlo.

En resumen, ante los hechos particulares de este caso y el análisis sosegado y balanceado de los factores relevantes, era forzoso concluir que las infracciones múltiples que el señor Cruz Rivera cometió **fueron de tal gravedad** que justificaban que el Alcalde le impusiera discrecionalmente la sanción más severa. Al concluir lo contrario, la Mayoría ignora **las consecuencias nefastas que actuaciones como las de este caso tienen en el erario y en la confianza del Pueblo en las instituciones que lo gobiernan.**

Por todo lo anterior, hubiese confirmado el dictamen del Tribunal de Apelaciones, que a su vez restituyó la determinación del Municipio de Guaynabo de destituir al señor Cruz Rivera. Debido a que la Mayoría optó por un curso de acción distinto, disiento.

Maite D. Oronoz Rodríguez
Jueza Presidenta